ANNA B. DISBROW, Appellee, v. DEERING IMPLEMENT COMPANY et al., Appellants.

No. 46234.

MAY 4, 1943.

C. A. Williams, Jr., of Oskaloosa, for appellants.

Doran, Doran & Doran, of Boone, for appellees.

BLISS, J.—■ The plaintiff is the widow of Charles Disbrow, an employee of the Deering Implement Company, who was killed in a collision of a truck, which he was driving in the course of his employment, and an automobile owned and operated by Dr. Lewis Bacon, of Pennsylvania. The collision was on September 18, 1940. ·Deceased was survived by his widow, and a married daughter, Donna M. Taylor, twenty-nine years old, who qualified as administratrix of her father's intestate estate. On October 30, 1940, the widow, as the only dependent, and the employer of her deceased husband, executed a memorandum of agreement under section 1436, Code of 1939, providing for the payment by the defendants to her of $11.87 a week for a period not to exceed three hundred weeks. The commissioner approved this agreement. On November 30, 1940, the administratrix filed in the district court of Boone County, Iowa, in which the dece-

dent's estate was being administered, an application for an order approving the consummation of what is termed a nonliability settlement with Dr. Bacon, through his insurance carrier, to avoid expensive and questionable results of litigation. Dr. Bacon and his representatives at all times denied any and all liability for the injury and death of Disbrow and made no admissions of fault or negligence with respect thereto. In this compromised settlement the administratrix received $2,500. The receipt which she gave for the money recites:

"Whereas Dr. Lewis H. Bacon denies all liability on account of the death of Charles Perry Disbrow, both parties desire and have agreed to compromise, adjust and settle the matter for the sum of $2500."

Other than the fact that the collision of the vehicles happened as stated herein, on Highway No. 30, near Boone, the record is silent as to the cause of the collision, or with respect to any attending circumstances. There is nothing to show that the collision or any of its consequences was due to any fault or to any negligence of Dr. Bacon. Nor does the record show that the $2,500 was paid or received in satisfaction of damages due to the collision, or because of any liability of Dr. Bacon. On the other hand, the record shows that the money was paid and received to avoid litigation. The commissioner in his order found the facts as above stated. In fact, the appellants, in their printed argument in this court, state:

"It must be remembered that the defendants-appellants have not asserted or contended that the fatal injury in question was due to the fault or negligence of the third party."

The district court of Boone county made an order in probate approving the settlement of the administratrix and Dr. Bacon, and authorizing the administratrix to accept the money and to receipt for the same in settlement of the claim for damages held by the estate of the decedent against Dr. Bacon. The money was received by the administratrix on December 6, 1940.

No action was ever brought by the administratrix or by the widow against Dr. Bacon. There were no proceedings in court

against him, or any recovery of damages in court, or any judgment against him. The appellants never served any notice upon the widow, or upon anyone else, demanding that action be brought against Dr. Bacon, and neither appellant brought any such action.

There is nothing to show that the appellants had any knowledge of the negotiations between the administratrix and Dr. Bacon or his representatives looking to a settlement. The record is also silent as to any knowledge of, or participation in, or consent to, the settlement, on the part of the widow.

On May 31, 1941, the appellants filed with the industrial commissioner their written consent, as provided in Code section 1382(3), to the settlement between the administratrix and Dr. Bacon. On June 2, 1941, the appellants filed with the commissioner their application for an order allowing a credit to them, for the amount of $2,500 received by the administratrix, upon the amounts paid and to be paid by them under the memorandum agreement of October 30, 1940.

To this application, the widow, Anna B. Disbrow, the appellee herein, filed answer and resistance, admitting the death of her husband in the automobile collision, the payment of the $2,500 to the administratrix, "* * * not in settlement of a claim for damages but purely as a compromise and without in any manner admitting any liability on the part of Dr. Lewis H. Bacon * * *." She also alleged that she had never at any time made any compromise agreement with Dr. Bacon or his representatives, and that any such agreement was made by the administratrix; that there had never been any recovery of damages by her, and no legal liability or recovery of damages had ever been established against Dr. Bacon or those representing him, by judgment, admission, or otherwise, and that neither the employer nor the insurance carrier was entitled to be indemnified from any source whatsoever. She further answered that the administratrix had not been made a party to the proceeding and neither she nor the estate was within the jurisdiction of the commissioner; that her husband died intestate, leaving a daughter who would receive two thirds of the net estate as sole heir at law; that she, as widow and claimant, had never received any part of her distributive share.

Upon a hearing on the application and answer alone, and without any testimony, the commissioner granted the application. On a petition for review a further hearing was had, also without testimony, although the commissioner stated at the hearing that either side might offer evidence if they cared to but otherwise the matter would be submitted on the written record. The commissioner held that the claimant was not entitled to the relief prayed for. The district court, on the appeal of the widow, reversed the order of the commissioner and denied the application of the employer and its insurance carrier for the credit prayed for.

I. The commissioner bottomed his decision largely upon two provisions of the workmen's-compensation law, being paragraph 3 of section 1382, and paragraph 4 of section 1421, of the 1939 Code. The appellants follow very largely the reasons given by the commissioner in support of his orders.

Section 1382, except as indicated by omissions therefrom, is as follows:

"Liability of others—subrogation. When an employee receives an injury for which compensation is payable under this chapter, and which injury is caused under circumstances *creating a legal liability* against some person other than the employer to pay damages, the employee, or his dependent, or the trustee of such dependent, may take proceedings against his employer for compensation, and the employee or, in case of death, his legal representative may also maintain an action against such third party for damages. When an injured employee or his legal representative brings an action against such third party, a copy of the original notice shall be served upon the employer by the plaintiff, not less than ten days before the trial of the case, but a failure to give such notice shall not prejudice the rights of the employer, and the following rights and duties shall ensue:

"1. If compensation is paid the employee or dependent or the trustee of such dependent under this chapter, the employer by whom the same was paid, or his insurer which paid it, shall be indemnified out of *the recovery of damages* to the extent of the payment so made, with legal interest, and shall have a lien on the claim for such recovery and the judgment thereon for the com-

pensation for which he is liable. * * *." [The omitted sentence refers to the preservation of the lien.]

"2. In case the employee fails to bring such action within ninety days, * * * after written notice so to do given by the employer or his insurer, as the case may be, then the employer or his insurer shall be subrogated to the rights of the employee to maintain the action against such third party, and may recover damages for the injury to the same extent that the employee might. In case of recovery, the court shall enter judgment for distribution of the proceeds thereof as follows: * * * [The parts omitted are: subdivisions (a), providing that the employer shall retain sufficient to reimburse himself for compensation paid, (b) the present worth of a sum sufficient to pay future compensation, and (c) the balance to be paid to the employee.]

"3. Before a settlement shall become effective between an employee or an employer and such third party *who is liable for the injury*, it must be with the written consent of the employee, in case the settlement is between the employer or insurer and such third person; and the consent of the employer or insurer, in case the settlement is between the employee and such third party; or on refusal of consent, in either case, then upon the written approval of the industrial commissioner.

"4. * * *." (Italics ours.)

Prior to the 1924 Code, section 1382 appeared as section 2477-m6 of the 1913 Supplement, except for some later changes not pertinent here. It was this section which was construed in some of our decisions hereinafter referred to. Its language was as follows:

"Liability of other than that of employer. Where an employe coming under the provisions of this act receives an injury for which compensation is payable under this act and which injury was caused under circumstances *creating a legal liability in* some person other than the employer, to pay damages in respect thereof:

"(a) Proceedings against both parties. The employe or *beneficiary* may take proceedings both against that person to recover damages and against the employer for compensation, but

the amount of the compensation to which he is entitled under this act shall be reduced by the amount of damages recovered.

"(b) Indemnity—subrogation. If the employe or beneficiary in such case recovers compensation under this act, the employer by whom the compensation was paid or the party who has been called upon to pay the compensation, shall be entitled to indemnity from the person *so liable* to pay damages as aforesaid, and shall be subrogated to the rights of the employe to recover therefor." (Italics ours.)

The Fortieth General Assembly in its extra session, in the enactment of the 1924 Code, substituted for section 2477-m6, section 22 of chapter 3 of House File 42 (chapter 28 of the Acts of that extra session, approved April 3, 1924). It added paragraph 3 of section 1382, and the section appears in the 1939 Code as it was then enacted.

The appellants and the commissioner concede that the appellants can claim nothing under paragraphs 1 and 2 of section 1382. They base their right to relief solely upon paragraph 3 of the section, aided by paragraph 4 of section 1421 of the 1939 Code. Appellants say:

"The situation is in no sense analogous to the situations contemplated by Paragraphs (1) and (2) of Section 1382. There we are confronted with a third party who is not going to pay any money unless he is adjudged liable in a common law action. Here we are dealing with a third person *who voluntarily pays out money. We don't need to prove him legally liable in order to make the settlement.*" (Italics ours.)

In other words, they plainly assert that if a third person, wholly blameless with respect to the death of the employee, out of the goodness of his heart, or through sympathy, or charity, makes a money gift, not to the dependent but to the estate of the decedent in which the dependent is but a minor participant, they are entitled to have the amount of the gift credited upon the award of the dependent, even though the latter thereby receives but a small fraction of the award, and the employer, or rather his paid insurer, gets the full benefit of the third party's generosity and charity. Such contention is wholly contrary to the

humanitarian purposes of the statute and is beyond both its spirit and its express language.

Paragraphs 1, 2, and 3 of the section, and the rights of the employer and insurer thereunder, are governed and limited by the words in the first paragraph of the section, to wit: "* * * *which injury is caused under circumstances creating a legal liability* against some person other than the employer to pay damages, * * *." (Italics ours.) These words apply to paragraph 3 just as they do to the preceding paragraphs. They are all a part of one section in a chapter of a bill passed as a whole and at the same time. Some mention is made of the fact that paragraph 3 was enacted after section 2477-m6 of the 1913 Supplement as bearing upon whether the first paragraph of section 1382 applies to paragraph 3.

But if paragraph 3 had merely been added to section 2477-m6 of the 1913 Supplement, the construction would be the same, as it is a well-settled rule of statutory construction that the addition shall be construed and interpreted as though it were a part of the statute when the latter was enacted. See State ex rel. Iowa State Board v. Local Board of Review, 225 Iowa 855, 866, 283 N. W. 87; McGuire v. Chicago, B. & Q. R. Co., 131 Iowa 340, 345, 108 N. W. 902, 904, 33 L. R. A., N. S., 706; 59 C. J. 1096, section 647.

A leading case in the construction of section 2477-m6, and one quite often quoted, is Renner v. Model Laundry Co., 191 Iowa 1288, 1293, 1294, 184 N. W. 611, 613. In that case a covenant not to sue the third party was given by the employee. In construing the same language which is in the first paragraph of section 1382, Justice Weaver said:

"It will be seen from the reading that the first or introductory sentence of the section prescribes the condition under which its provisions shall have application, and that is, an injury to the employee *'caused under circumstances creating a legal liability in some person other than the employer, to pay damages.'* * * * What, then, does the statute prescribe as the basis or foundation of the right which the appellants assert? The opening declaration of the statute states the first essential condition to be that the employee's injury has been 'caused under circum-

stances creating a legal liability in some person other than the employer.' * * * Without this foundation, there is nothing upon which to construct the pleaded defense. This record is, as we have before noted, wholly without evidence of the 'circumstances' under which Bodine was injured, except the simple fact that it occurred in a collision between the wagon he was driving and a street car. There is neither allegation nor proof of any fact or facts to indicate 'legal liability' of the railway company. This alone would seem a decisive objection to the position of the appellants.''

The language of the court is just as applicable to this case as it was in the Renner case.

In that case, as in this one, the burden was upon the employer to establish the legal liability of the third party and the other allegations of its affirmative pleading. The appellants failed there, as they have here. The giving of the receipt and instrument of settlement was neither an admission of liability nor proof of the payment of damages. In this case, also, the appellants failed to establish the receipt of any part of the $2,500 by the appellee. The fact that paragraph 3 was not a part of the section construed in the Renner case does not detract from the value of the decision as an authority in this case.

When the decision was rendered in Southern Sur. Co. v. Chicago, R. I. & P. R. Co., 215 Iowa 525, 529, 531, 245 N. W. 864, 866, section 1382 was the same as it is now. In that case the employer's insurer sued the third party. As in this case, it failed to prove that the third party was liable for the injury, or that it had ever admitted such liability. In denying recovery, the court said:

''Particular attention is called to the positive status which the third party must occupy before any recovery can be had against him either by an injured employee, the employer, or the insurer; and that is that the injury for which damages may be recovered must have been caused under circumstances which created a legal liability on such third party to pay damages. That status must have been established either by an action at law or an admission on the part of the third party. A mere allegation of guilt will not place a third party in the required

status. \* \* \* This court cannot hold, however strongly contended for by counsel for appellant, that the agreement made between the employee and the railway company was an admission of liability on the part of the railway company, nor that the payments made under such agreement were for damages."

That the third party must be liable for the injury to the employee, or "the wrongdoer," as he is often referred to, before the employer or his insurer can benefit under section 2477-m6 of the 1913 Code Supplement or under section 1382, has frequently been stated by this court. See Paine v. Wyatt, 217 Iowa 1147, 251 N. W. 78; Lang v. Siddall, 218 Iowa 263, 273, 254 N. W. 783; McGraw v. Seigel, 221 Iowa 127, 133, 263 N. W. 553, 106 A. L. R. 1035; Southern Sur. Co. v. Chicago, St. P. M. & Omaha Ry. Co., 187 Iowa 357, 358, 359, 174 N. W. 329; Black v. Chicago G. W. R. Co., 187 Iowa 904, 174 N. W. 774; Fidelity & Cas. Co. v. Cedar Valley Elec. Co., 187 Iowa 1014, 174 N. W. 709; Greiner v. Hicks, 231 Iowa 141, 146, 147, 300 N. W. 727, 730, 731.

In other jurisdictions where the statutory provisions are similar to section 1382, the courts have uniformly given the same construction to these provisions as we have given to section 1382, and have cited the Renner case and the Southern Surety Company case in 215 Iowa, with approval. See United States F. & G. Co. v. New York, New Haven & Hartford R. Co., 101 Conn. 200, 125 A. 875; Travelers Ins. Co. v. Luckey, 46 Ga. App. 593, 167 S. E. 907; Grand Rapids Bedding Co. v. Grand Rapids Furniture Temple, 218 Mich. 486, 188 N. W. 538; Sweat v. Allen, 145 Fla. 733, 200 So. 348; Thede v. Jefferson Deposit Co., 210 Ill. App. 450; Travelers Ins. Co. v. Bumstead, 182 Ga. 692, 186 S. E. 742; Carlson v. Minneapolis Street Ry. Co., 143 Minn. 129, 173 N. W. 405; Traders & General Ins. Co. v. West Texas Util. Co., Tex. Civ. App., 156 S. W. 2d 271, 276; American Mut. Liab. Ins. Co. v. Wigley, 179 Ga. 764, 177 S. E. 568, 570; Western Maryland Ry. Co. v. Employers Liab. Assur. Corp., 163 Md. 97, 161 A. 5; Hartford Acc. & Indem. Co. v. Weeks Drug Store, Tex. Civ. App., 161 S. W. 2d 153.

The very language of paragraph 3 of section 1382, on which appellants rely, expressly refers to the third party "who is liable for the injury."

Paragraph 3 of section 1382 states that there must be the consent specified, "before a settlement shall become effective." Just what the quoted words mean is not more definitely stated. They might very well mean that if the employer or insurer did not consent to the agreement, the third party might be sued by either the employer or insurer. We shall not attempt to interpret just what the paragraph means, but it certainly does not expressly state, nor is it reasonably to be implied therefrom, that under the circumstances in this case, it authorizes a credit of $2,500 on the award to the dependent widow.

█ The appellants filed a written consent to the settlement of the administratrix and Dr. Bacon. Such consent must be construed to be as broad as the terms of the contract and the apparent intent of its parties. The agreement expressly stated that the doctor denied all liability and was settling as a matter of convenience. The consent of the appellants must be construed as approving this condition. They could have refused to approve, and have served the ninety-days' notice and then sued Dr. Bacon, but they apparently concluded that there was little chance of procuring judgment against him.

█ It is apparent that the appellants have not brought themselves within the express condition of section 1382, that the third party must be one legally liable for the injury or death of the employee, and within the rule of the cases cited, and that they have not attempted to do so, but base their right to the relief prayed for upon the ground that they are entitled to recover, even though the third party is not liable or a wrongdoer and could not be compelled to pay but pays voluntarily and as a mere donor. Their position is without merit and is contrary to the section and to our holdings, as above noted. We also said in Greiner v. Hicks, supra, 231 Iowa 141, 147, 300 N. W. 727, 731:

"Of course, payments by third persons, not wrongdoers, in the nature of gratuity or arising from contract, need not be applied in diminution of damages. Brandstein v. Ironbound Transp. Co., 112 N. J. L. 585, 172 A. 580, 104 A. L. R. 926."

For this reason alone the appellants were not entitled to recover.

II. It will be observed that paragraph 3 speaks only of an administrator of an employee making such an agreement. The commissioner and the appellants rely upon paragraph 4 of section 1421 covering definitions. This paragraph states:

"* * * Any reference to a workman or employee who has been injured shall, when such workman or employee is dead, include his dependents as herein defined or his legal representatives; * * *."

For the word "employee" in paragraph 3 of section 1382, they would substitute "legal representative or administratrix of the deceased employee."

No doubt the rule expressed in the quotation from paragraph 4 of section 1421 is generally applicable under the workmen's-compensation law, but it has its limitations, and the terms "employee," "dependents," and "legal representatives" of the employee are not to be interchanged or substituted one for the other where it would change the plainly intended meaning of a section or part thereof or defeat an object of the act itself. It is a fact well known to all that the heirs of a deceased employee very often include those who are not dependents of the deceased, and that a recovery by, or a judgment in favor of, or a settlement by and for, an administrator, might be of little benefit to a dependent, and yet it would wipe out or greatly diminish his award if the amount of the recovery, judgment, or settlement were credited thereon. Such was the result of the commissioner's order in this case. It appears from the files in the Disbrow estate, which were before the trial court, that the probate court allowed a contingent attorney's fee of fifty per cent for the collection of the $2,500 from Dr. Bacon's insurer. This left $1,250 for the estate. Out of the net amount of this, after paying costs of administration and any claims, the daughter of the deceased, as his only heir, will get two thirds, leaving but a few hundred dollars to the widow. Just how much cannot be ascertained from the record before us. And yet, for this small benefit, her stipulated award of $3,561 would be reduced by a credit of $2,500, under the commissioner's order. The commissioner deplored this result. He stated:

"With reference to the question of unfairness we may agree, but the remedy is one to be corrected if at all by the general assembly and not the Commissioner."

We are constrained to hold that the remedy is not one of further legislation, but rather of proper statutory construction. The workmen's-compensation law was designed to aid and protect the industrial worker and his dependents against the hazards of the worker's employment, and to cast upon the industry in which he is employed a share of the burden resulting from industrial accidents. Such legislation is primarily for the benefit of such worker and his dependents. Its beneficent purpose should not be defeated by reading something into a section which is not there, or by a narrow or strained construction. As stated in McGraw v. Seigel, 221 Iowa 127, 132, 263 N. W. 553, 555, 106 A. L. R. 1035:

"But we think the duty is imposed on courts to function, in the interpretation of statutes, in a manner more likely to ascertain the real intent of the legislature than would result from arbitrarily adopting the verbiage of a statute, without heeding other indications of legislative intent, and without considering the result of such arbitrary interpretation."

In Oliphant v. Hawkinson, 192 Iowa 1259, 1263, 183 N. W. 805, 807, 33 A. L. R. 1433, we quoted with approval from Uphoff v. Industrial Board, 271 Ill. 312, 315, 111 N. E. 128, 130, L. R. A. 1916E, 329, Ann. Cas. 1917D, 1, as follows:

" 'The intention of the lawmakers is the law. This intention is to be gathered from the necessity or reason of the enactment and the meaning of the words, enlarged or restricted according to their real intent. In construing a statute the courts are not confined to the literal meaning of the words. A thing within the intention is regarded within the statute, though not within the letter. A thing within the letter is not within the statute, if not also within the intention. When the intention can be collected from the statute, words may be modified or altered, so as to obviate all inconsistency with such intention. * * * When great inconvenience or absurd consequences will result from a particular construction, that construction should be avoided, un-

less the meaning of the legislature be so plain and manifest that avoidance is impossible. * * * The courts are bound to presume that absurd consequences leading to great injustice were not contemplated by the legislature, and a construction should be adopted that it may be reasonable to presume was contemplated.' ''

The widow in the case before us stipulated upon the weekly amount which she was to receive for three hundred weeks. She thought that was an end of the matter, but without consent or participation on her part, so far as the record discloses, these future payments were largely taken from her, as ruled by the commissioner, by the act of the administratrix, whose interest was adverse to the widow. Her position was aptly described by the court in Southern Sur. Co. v. Chicago, R. I. & P. R. Co., supra, 215 Iowa 525, 531, 532, 245 N. W. 864, 867, thus:

"The right of Wills to sue the Railway Company was at his option. He could have remained passive and been content with the compensation due him from his employer. His refusal to sue the Railway Company for damages would have in no way affected his right to receive the compensation."

It is our conclusion that the judgment of the trial court is right and it is therefore affirmed.—Affirmed.

GARFIELD, C. J., and HALE, OLIVER, SMITH, MULRONEY, and WENNERSTRUM, JJ., concur.

MILLER, J., dissents from Division II.

MILLER, J. (dissenting)—I am unable to agree with certain implications contained in Division II of the opinion herein and respectfully dissent therefrom.

The word "implications" is used advisedly. The opinion holds that subparagraph 3 of section 1382, Code, 1939, does not warrant the commissioner's decision. The result is justified by Division I of the opinion. Subparagraph 3 of section 1382 applies to a settlement between an employer or an employee and such third party who is liable for the injury. Division I of the opinion correctly points out that there is no evidence to support a finding that Dr. Bacon was legally liable for the death of appel-

394

lee's husband. Accordingly, the settlement is not one coming within the contemplation of the statute. However, Division II indicates that the statute is not applicable to a settlement between the administrator of a deceased employee and a third party who is liable for the injury, on the theory that subparagraph 4 of section 1421, Code, 1939, is not to be given effect wherein it provides that *any* reference to a workman or employee who has been injured shall, when such workman or employee is dead, include his dependents or his legal representatives. I disagree with this implication.

Section 1382, Code, 1939, is made expressly applicable to litigation arising out of a death case. The right of the employer to subrogation is expressly recognized in such litigation. If that right exists in the event of litigation, it seems clear that it should also exist in the event of a settlement of litigation. The industrial commissioner so held. Insofar as he held, as an abstract proposition of law, that subparagraph 3 of section 1382 applies to death cases, he was carrying out the express language of subparagraph 4 of section 1421. The implication of the opinion that such a conclusion of law is erroneous appears to me to be wholly unwarranted and contrary to the express language of chapter 70 of the Code.