PASQUALE SALIERNO, PETITIONER-RESPONDENT, v.
MICRO STAMPING CO., RESPONDENT-APPELLANT.

Argued September 28, 1976—Decided February 15, 1977.

*Mr. George J. Kenny* argued the cause for appellant
(*Messrs. McElroy, Connell, Foley and Geiser,* attorneys).

*Mr. Herman M. Wilson* argued the cause for respondent.

PER CURIAM. The judgment is affirmed substantially for the reasons set forth in Judge Larner's opinion for the Appellate Division.[1]

As to the issue of employment connection of the employee's activity in the negotiation of a labor contract as shop steward, see the related discussion in our decision this day of *Mikkelsen v. N. L. Industries*, 72 *N. J.* 209 (1977).

With reference to the matter of the causal relation between the myocardial infarction sustained by the petitioner in April 1971 and that of November 1971, and the citation in the partial dissent of *Schiffres v. Kittatinny Lodge, Inc.*, 39 *N. J.* 139 (1963), it is to be noted that the latter decision stressed the substantial time period between the two infarctions there (3½ years) and the different locations in the heart muscle infarcted. 39 *N. J.* at 147. In the instant case the time interval between infarctions was six months, and, according to the uncontradicted testimony of those physicians who addressed the point, which was given credence by the compensation judge, the same part of the myocardium was implicated both times. Here, too, two physicians furnished explicit physiological explanations for their conclusions of causal connection. *Cf.* 39 *N. J.* at 150. We cannot say the determination of causation by the compensation judge is not supported by sufficient credible evidence.

Judgment affirmed.

CLIFFORD and SCHREIBER, JJ. (dissenting in part). While we join in the determination that petitioner's first myocardial infarction arose out of and in the course of his employment, we do not agree with the majority's conclusion that the second attack was causally related to the first. That result represents both bad medicine and bad law.

---

[1]This appeal is before the Court on certification. 69 *N. J.* 391 (1976).

Although this Court ordinarily is disinclined — as it ought to be — to review concurrent factual findings of two tribunals (cf. *Phillips v. Quik-Snap Printing*, 64 *N. J.* 216, 217–18 (dissenting opinion)) — it is not at all clear that the Appellate Division took into account all the medical evidence; therefore, in the interest of justice we have made an independent study of the record, including the exhibits. See *Aladits v. Simmons Co.*, 47 *N. J.* 115, 124 (1966).

That study reveals that petitioner, a 58-year-old diabetic with coronary artery disease and, according to his treating physician, "a high-risk candidate for myocardial infarction," sustained his initial heart attack on April 13, 1971. It was produced by an acute myocardial infarction in the inferior wall of the left ventricle, as demonstrated on electrocardiographs taken at East Orange General Hospital where petitioner was confined until May 4, 1971. In July he returned to full-time employment, continuing to work every day until the second attack in November. On Saturday, November 13, 1971, he developed "angina" for which he took nitroglycerin 5 times "with fair relief each time," according to the hospital record. He did very little on Sunday, remaining home all day. While asleep that night, he suffered an attack around 2:00 A.M. and was again taken to the East Orange General Hospital. There he came under the care of the same physician who had treated him during his first confinement. At the conclusion of this second hospitalization the treating doctor's diagnosis was "Diagphragmatic MI [myocardial infarction] due to coronary artery disease. Diabetes mellitus."

As respects the issue on which we part company with the majority — the causal relationship between the first and second infarcts — it is well to observe at the outset that all the expert witnesses agree that the initial infarct had healed. Petitioner's medical thesis was that the first coronary insult had impaired the blood circulation in the area of the infarct, and that when exertion occurred, a greater burden was imposed on the heart because of the

weakened area. It was assumed that the second infarct occurred in the "same place" as the first because of that condition.

There are two difficulties with this thesis. First, the uncontroverted facts disclosed by the series of objective, impartial electrocardiographs taken during both hospitalizations demonstrate that the infarcts occurred at different locations. Those taken during the second confinement reveal the old *inferior wall* infarction of the left ventrical and its stable pattern (leads II and III). In addition, the electrocardiographs depict a new, second infarct at the *anterior lateral wall* toward the left side of the left ventrical as reflected by leads V4, V5, and V6. In no sense can these two infarcts be said to have occurred in the same location. The distinction, as graphically revealed by the electrocardiographs, is a matter of basic textbook anatomy. *See, e. g.,* M. Goldman, *Principles of Clinical Electrocardiography* (1966), at 166 and 176.

Second, under petitioner's theory *any* effort would be contraindicated and whenever a coronary infarction might occur, any subsequent infarction would necessarily be considered as casually related to the first. This Court pointed out in *Schiffres v. Kittalinny Lodge, Inc.,* 39 *N. J.* 139, 147 that:

[i]n other words, irrespective of the number of subsequent infarctions, however distant in time from the employment effort which caused or contributed to the first attack, the later ones, even a fatal one, must be treated conclusively as progressive emanations of the first attack. Acceptance of such a thesis would make payment of compensation automatic for increased disability or for death resulting from any subsequent infarction. The first compensation award for a coronary occlusion would be *res judicata* of employer's liability for further payments simply upon proof of a subsequent myocardial infarction. Such a startling principle cannot be utilized in the administration of the Workmen's Compensation Act as a basis for an award unless it represents uncontrovertible medical fact.

We conclude that petitioner has not met his burden of establishing by the greater weight of the credible evidence the causal connection between the two infarcts and has not dis-

pelled the presumption that the second infarct was the normal consequence of progressive coronary disease. We would therefore modify the judgment of the Appellate Division and remand to the Division of Workers' Compensation for a determination as to the quantum of disability resulting from the April, 1971 work-connected incident and for the entry of judgment based on an appropriate award.

*For affirmance*—Justices MOUNTAIN, SULLIVAN and PASHMAN and Judge CONFORD—4.

*Dissenting in part*—Justices CLIFFORD and SCHREIBER—2.