**CATERPILLAR TRACTOR COMPANY, Self-insured Employer, Appellee,**

v.

**Leland Dale SHOOK, Appellant,**

**and**

**Iowa Industrial Commissioner, Defendant.**

**No. 65384.**

Supreme Court of Iowa.

Dec. 23, 1981.

Michael W. Liebbe, of Raben, Liebbe, Shinkle & Bremer, Davenport, for appellant.

Larry L. Shepler, of Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, for appellee.

Considered by REYNOLDSON, C. J., and McCORMICK, McGIVERIN, LARSON and SCHULTZ, JJ.

McCORMICK, Justice.

The questions here are whether defendant Leland Dale Shook was an employee of plaintiff Caterpillar Tractor Company when he was injured and, if so, whether the injuries occurred during the course of his employment. The industrial commissioner decided these questions in Shook's favor in holding he was entitled to workers' compensation benefits. Upon Caterpillar's petition for judicial review, the district court reversed on the basis of a negative answer to the first question. Because we believe the industrial commissioner was right, we reverse the district court.

The case was presented on stipulated facts, depositions and exhibits. The stipulation was proposed by Caterpillar. Shook's counsel agreed it could be considered as evidence by the commissioner. It was largely based, however, on deposition testimony of Shook and Gary Brummerstedt, Caterpillar's labor relations manager, as well as documentary exhibits.

Shook had been a machine operator for Caterpillar who was elected by his fellow union members to three union positions to which he devoted full time. He became chairman of the grievance committee, president of the union, and chairman of the union's bargaining unit. The collective bargaining agreement allowed Shook compensation from Caterpillar at the regular rate for his former shift hours while performing his duties as chairman of the grievance committee. He was "considered to be on leave of absence." Deductions were to be made by Caterpillar for time spent by Shook working in his other union capacities. Negotiations were among the excluded activities. Shook accounted to Caterpillar by filing "exception slips" to report time spent on excluded work.

On August 20, 1976, Shook spent the morning at the union hall doing work which the parties agree was compensable under the agreement. A bargaining session was scheduled in the plant offices for 1:30 p.m. Shook left the union hall at approximately 1:00 p.m. to travel to the plant on his motorcycle. The accident which resulted in the present claim occurred en route. He was treated at a local hospital for his injuries and released in time to participate in negotiations starting at 3:00 p.m. and ending at 4:00 p.m.

Pursuant to the agreement, Shook was paid by Caterpillar for his activities until the negotiations began. He filed an exception slip with Caterpillar showing the period he was in negotiations. He filed a claim with the union for that activity and was subsequently compensated by the union for the negotiating period.

The parties' stipulation contains an obvious mistake concerning the date of the accident. The mistake has led Caterpillar to argue that Shook was paid by the union for the period he was traveling to the negotiations. The stipulation erroneously recites that the accident occurred on August 19, 1976. It also recites, accurately, that he was reimbursed for negotiations between 1:00 p.m. and 3:00 p.m. on that date. Shook's claim, his petition for arbitration, his medical bill, Caterpillar's answer, the parties' discovery, and the findings of the commissioner and court all show that the accident actually occurred on August 20. Like the commissioner and district court, we will disregard the mistake in the stipulation. See *Estate of Clark v. Lundy*, 181 N.W.2d 138, 143 (Iowa 1970).

The union maintained a workers' compensation policy which Shook testified covered union employees "being paid by the local union to perform duties." Because Shook contended he was covered for workers' compensation purposes by Caterpillar during the period for which he was compensated by Caterpillar, he filed a claim for workers' compensation with Caterpillar. When Caterpillar denied coverage, he petitioned for arbitration. After hearing, a deputy industrial commissioner filed a proposed decision allowing his claim. Upon appeal by Caterpillar from the proposed decision, the industrial commissioner found in Shook's favor. Upon petition for further review, the district court reversed. In reversing the commissioner's decision, the district court held that the decision resulted partly from legal error and partly from findings of fact that were unsupported by substantial evidence under the whole record.

■ I. *The employer-employee relationship.* As defined in section 85.61(2), The Code, an "employee" is a "person who has entered into the employment of, or works under contract of service . . . for an employer." Factors to be considered in determining whether this relationship exists are: (1) the right of selection, or to employ at will, (2) responsibility for payment of wages by the employer, (3) the right to discharge or terminate the relationship, (4) the right to control the work, and (5) identity of the employer as the authority in charge of the work or for whose benefit it is performed. The overriding issue is the intention of the parties. *McClure v. Union, et al., Counties*, 188 N.W.2d 283, 285 (Iowa 1971).

■■ Four additional considerations are relevant. First, because the commissioner is charged with weighing the evidence, his findings will be broadly and liberally con-

strued to uphold his decision. *Id.* at 284. Second, the primary purpose of the workers' compensation statute is to benefit the worker and the worker's dependents insofar as the statute permits. *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 188 (Iowa 1980). Thus the statute is to be interpreted liberally with a view toward that objective. *Irish v. McCreary Saw Mill*, 175 N.W.2d 364, 368 (Iowa 1970).

■ Third, the statute is intended to cast upon the industry in which the worker is employed a share of the burden resulting from industrial accidents. *Disbrow v. Deering Implement Co.*, 233 Iowa 380, 392, 9 N.W.2d 378, 384 (1943). The theory is that the ultimate cost is borne "by the consumer as part of the cost of the product." 1C A. Larson, *The Law of Workmen's Compensation* § 43.51 at 8–17 and 18 (1980). As a result, "any worker whose services form a regular and continuing part of the cost of the product, and whose method of operation is not such an independent business that it forms in itself a separate route through which his own costs of industrial accident can be channeled, is within the presumptive area of intended protection." *Id.* at 8–18.

■ Finally, an employee may have more than one employer. In that situation the worker may be an employee of one employer for the purpose of certain activities but the employee of another employer while doing other work. For example, an employee of a company which was struck who was acting as a picket captain was held to be an employee of the striking union. *See Jones v. Workmen's Compensation Appeals Board*, 20 Cal.App.3d 124, 97 Cal.Rptr. 554 (1971) (nothing incongruous about an employee being on one occasion an employee of the company which is struck and on another an employee of the union).

Mindful of these considerations, we examine the relevant criteria in the light of the evidence most favorable to the commissioner's findings.

■ Caterpillar had no say in Shook's selection as chairman of the grievance committee. However, the company did select Shook as its employee. If it had not done so, he would not have been eligible to chair the committee. Further, Caterpillar consented to have one of its employees put in that position. Thus, although Shook was directly selected as chairman by the union members, Caterpillar did have a role in the process.

Caterpillar had responsibility for paying Shook's wages when he was not engaged in an excepted activity. He was not engaged in excepted activity when he was injured. Therefore Caterpillar was responsible for his wages at that time.

The company lacked authority to remove Shook as chairman of the grievance committee. He was "considered" to be on paid leave of absence. Yet labor relations manager Brummerstedt testified that he still had employee status. Brummerstedt said he had power to terminate Shook's leave of absence and his employment. He said he could suspend him for a rules infraction. Shook testified he was subject to the manager's supervision, said the manager told him he was his "boss," and he considered him his boss in connection with his grievance committee duties. In effect, he said he was at Brummerstedt's beck and call. He was called to the plant to see the manager many times. For example, Brummerstedt once called him to the plant to talk with an employee about a problem. On another occasion the manager called him in to explain a decision to downgrade certain jobs. Shook said that, like other employees, he was required to get the labor relations manager's permission to take "bonus days" off and to take time off to attend to personal problems.

Obviously Caterpillar did not have authority to control Shook's performance as chairman of the grievance committee. Nonetheless it did influence the way in which he spent his time, demanded and expected cooperation from him in matters of mutual concern, and retained residual authority over him by reason of the special employment relationship. To some extent, an employer's control over a tenured professor or professional employee would be simi-

larly limited. *See* 1C A. Larson, *supra*, at § 45.32(b). Control over details of work has more significance in a vicarious liability problem than in a workers' compensation dispute. *Id.* at § 43.42.

The district court agreed with the industrial commissioner that Caterpillar did benefit from the relationship because a properly operating grievance procedure contributes to industrial peace. It is true that Shook was cast in an adversary role in contested grievance proceedings. This does not mean, however, that Caterpillar did not benefit from his services. Courts have recognized that union activity which furthers industrial peace is beneficial to the company as well as the union for workers' compensation purposes. *See, e.g., Kennedy v. Thompson Lumber Co.*, 223 Minn. 277, 26 N.W.2d 459 (1947) (shop steward calling union agent to avert a work stoppage); *Mikkelsen v. N. L. Industries*, 72 N.J. 209, 370 A.2d 5 (1977) (employee voting on union issues off premises); *Salierno v. Micro Stamping Co.*, 136 N.J.Super. 172, 345 A.2d 342 (1975), *affirmed*, 72 N.J. 205, 370 A.2d 3 (1977) (union steward negotiating a contract); *Repco Products v. Workmen's Compensation Appeal Board*, 32 Pa.Cmwlth. 554, 379 A.2d 1089 (1977) (recognizing that union activity may be mutually beneficial to labor and management). Under this standard the industrial commissioner and district court did not err in finding that Caterpillar benefited from Shook's grievance committee activities.

When the relevant criteria are examined in this light, we believe the commissioner was correct in concluding that an employment relationship existed between Caterpillar and Shook at the time he was injured. We find substantial support for the commissioner's findings of fact, and no error of law has been demonstrated. Although the circumstances are unusual, the rules requiring liberal construction, favoring coverage, assigning risks as industrial costs, and recognizing dual employment tip the balance toward the commissioner's conclusion.

■ II. *The course of employment issue.* In holding that Shook was injured in the course of his employment with Caterpillar, the commissioner applied the standard in *Bushing v. Iowa Railway & Light Co.*, 208 Iowa 1010, 1018, 226 N.W. 719, 723 (1929): "An injury occurs in the course of employment when it is within the period of employment at a place where the employee reasonably may be performing his duties, while he is fulfilling those duties or engaged in doing something incidental thereto." The commissioner noted that Shook's work had commenced at 8:00 a.m., that he was on his way from the union hall to the negotiating session when he was injured, and that he was to be paid by Caterpillar until negotiations began.

Caterpillar claims, however, that compensation should be denied under the "going and coming" rule. Under the going and coming rule, compensation is generally denied to an employee who is injured off the employer's premises while going to and from work. *Frost v. S.S. Kresge Co.*, 299 N.W.2d 646, 648 (Iowa 1980). This rule, for example, resulted in denial of benefits to an employee returning from an unpaid lunch break. *See Halstead v. Johnson's Texaco*, 264 N.W.2d 757 (Iowa 1978). The present situation is different. Shook was being paid by Caterpillar for his time en route to the negotiations. His travel was incidental to his duties. The time, place and activity were work-connected. *See Frost*, 299 N.W.2d at 648.

Other courts have allowed compensation in similar circumstances. *See, e.g., Whaley v. Steuben County Rural Electric Membership Corp.* 139 Ind.App. 520, 221 N.E.2d 435 (1966); *Charles H. Stanford, Inc. v. Gregory*, 303 P.2d 1112 (Okl.1956); *Livingston v. State Industrial Accident Commission*, 200 Or. 468, 266 P.2d 684 (1954); *Muir v. Wilson Coal Co.*, 194 Pa.Super. 487, 168 A.2d 588 (1961). We find these authorities to be persuasive. They are analogous in principle to our cases allowing compensation when the employer has provided the employee's transportation to work. *See, e.g., Allied Mutual Casualty Co. v. Dahl*, 255 Iowa 208, 122 N.W.2d 270 (1963); *Pribyl v. Standard Electric Co.*, 246 Iowa 333, 67 N.W.2d 438 (1954).

The commissioner did not err in holding that Shook was injured in the course of employment.

We reverse the district court.

REVERSED.