**Joseph H. JONES, Appellant,**

v.

**SHELLER–GLOBE CORP., d/b/a Sheridan Manufacturing Co., Appellee.**

**No. 91–1147.**

Court of Appeals of Iowa.

March 24, 1992.

Robert F. Wilson, Cedar Rapids, for appellant.

Timothy J. Krumm and Thomas D. Hobart of Meardon, Sueppel, Downer & Hayes, Iowa City, for appellee.

Heard by OXBERGER, C.J., and HAYDEN and HABHAB, JJ., but decided en banc.

HABHAB, Judge.

Joseph Jones worked for Manpower, Inc., an employment service which provided temporary employees to various employers. Manpower assigned Jones to Sheller–Globe Corporation. While working at Sheller–Globe, Jones suffered an injury in the course of his employment.

Jones filed this tort suit against Sheller–Globe to recover for his injuries. Sheller–Globe filed a motion for summary judgment. It asserted Sheller–Globe was Jones's employer within the meaning of

Iowa Code section 85.20. Therefore, workers' compensation is Jones's exclusive remedy. The district court granted Sheller–Globe summary judgment.

Jones has appealed from the summary judgment. He argues there are genuine issues of material fact whether his employer was Sheller–Globe or Manpower. He asserts the district court erred by concluding as a matter of law Sheller–Globe was his employer and workers' compensation under Iowa Code chapter 85 was his exclusive remedy against that company. We affirm.

### I. *Standard of Review.*

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R.Civ.P. 237(c); *see Farm Bureau Mut. Ins. Co. v. Milne,* 424 N.W.2d 422, 423 (Iowa 1988). The moving party has the burden to show the nonexistence of a material fact, *Milne,* 424 N.W.2d at 423, and the evidence must be viewed in the light most favorable to the resisting party, *Thorp Credit, Inc. v. Gott,* 387 N.W.2d 342, 343 (Iowa 1986). The procedure is functionally akin to a directed verdict, and every legitimate inference that reasonably can be deduced from the evidence should be afforded the resisting party. *Id.; Sherwood v. Nissen,* 179 N.W.2d 336, 339 (Iowa 1970). A fact issue is generated if reasonable minds can differ on how the issue should be resolved, but if the conflict in the record consists only of the legal consequences flowing from undisputed facts, entry of summary judgment is proper. *Gott,* 387 N.W.2d at 343; *Milne,* 424 N.W.2d at 423.

### II. *Criteria for Employee; Facts.*

The main issue before us is whether a genuine dispute of material fact exists as to whether Sheller–Globe was the employer of Jones at the time of Jones's accident. The Iowa Workers' Compensation Act precludes any other action other than workers'

compensation against the employer of an employee for injury arising while the employee is acting in the course of his employment. Iowa Code § 85.20 (1991). Under the circumstances here, if Sheller–Globe was the employer of Jones, Jones is precluded from suing Sheller–Globe in a common-law tort action.

■ As defined by Iowa Code section 85.61(2), an "employee" is a "person who has entered into the employment of, or works under contract of service ... for an employer." Iowa Code § 85.61(2) (1991). In this respect, the Iowa Supreme Court has set out the criteria for determining whether an entity is an employer. There are five factors to be considered:

1. The right of selection, or to employ at will;
2. The responsibility for payment of wages by the employer;
3. The right to discharge or terminate the relationship;
4. The right to control the work; and
5. Identity of the employer as the authority in charge of the work or for whose benefit it is being performed.

*Caterpillar Tractor Co. v. Shook,* 313 N.W.2d 503, 505 (Iowa 1981) (citation omitted); *Henderson v. Jennie Edmundson Hospital,* 178 N.W.2d 429, 431 (Iowa 1970).

A contract existed between Manpower and Sheller–Globe. Under the contract[1], Manpower provided employees to its customer. The employees were free to work for the customer or not without jeopardizing their relationship with Manpower. Manpower had the exclusive right to hire or terminate its employees. However, a customer could, for any valid reason, request that an employee be removed. The agreement further provided Manpower was to provide all workers' compensation coverage for the employees.

Manpower does not appear to have jobs directly under its control. Rather, Manpower is solely a worker broker company. It contracts with employers to find and provide workers and, in turn, takes care of

---

1. The agreement in the record is referred to as the Wagemaster Service Agreement.

all paperwork incident to the worker's employ. However, once the worker is provided, the actual employer takes over the direction and control of the employee, with all the various duties and rights which accompany the employee-employer relationship.

The customer here, Sheller–Globe, has the apparent exclusive control and direction of the employee while on the job. There is no indication Manpower in any way directs the work of the employee while at the customer's job site. Further, all work performed by the employee is for the benefit of and furtherance of the customer's business objectives. In addition, although Manpower pays the employee and provides the workers' compensation coverage, it receives from its customer a set consideration in accordance with the terms of their agreement.

### A.

In light of the facts set forth above, we review the trial court's summary judgment ruling. The trial court found Jones while working at Sheller–Globe was under the specific direction and control of that corporation. It further found Sheller–Globe had a right of selection or employment of Jones, the right to terminate his relationship with the company, and the right to control the work he is doing. Sheller–Globe paid Manpower as labor broker and Manpower paid Jones.

### III. *Analysis of Employee Criteria.*

■ We now turn to the criteria outlined by the supreme court in *Caterpillar Tractor* and *Henderson.* First, Sheller–Globe did have the right of selection or to employ at will. It was free to accept or reject any employee sent to it by Manpower. Of course, it had no say in whether Manpower continued to employ the particular employee with some other customer. Second, it appears Manpower had the responsibility to pay wages. It is clear, however, that Manpower was directly paid by Sheller–Globe according to the number of hours worked by the employee. Included as part of the charges of Manpower are expenses for compensation premium, social security, and other taxes.

Third, Sheller–Globe also retained the right to discharge the employee from the daily work assignment. The method of carrying this out was to merely request Manpower to remove the employee. When Manpower obliged, this then terminated the employment relationship. Fourth, there is no question Sheller–Globe maintained the full authority to control the work while the employee was at the job site. All the work in question was done under Sheller–Globe's exclusive direction and control.

Finally, the work done at the time of Jones's injury was for the benefit of Sheller–Globe. Jones argues the work was also for the benefit of Manpower. However, our review of the record reveals the only benefit Manpower received from any work was the contractual compensation for the brokered employee.

Our interpretation of this fifth criteria indicates "for whose benefit [the work] was performed" means whose business purpose is directly furthered by the work itself. *See Caterpillar Tractor,* 313 N.W.2d at 505–07. We believe this is consistent with the supreme court meaning as outlined in *Henderson* and in the later case of *Caterpillar Tractor.* Based on this interpretation, we conclude the work in question was done for the benefit of Sheller–Globe.

### IV. *Summary Judgment on Employee Issue.*

We turn to the legal issue of the summary judgment. As we pointed out earlier, the actual question before us is whether there is a genuine issue of material fact as to whether Sheller–Globe was the employer of Jones at the time of the accident. Other courts have addressed this issue.

A large number of courts, apparently the majority, have held that the employer of a brokered employee, including the entity directing the work for whose benefit the work is done, may be an employer under the workers' compensation statutes. *See* 1 A. Larson, *The Law of Workers Compensation,* § 48.23 at 8–476. We note the United States Eighth Circuit Court of Ap-

peals affirmed, by per curiam opinion, a summary judgment on this issue. *Beaver v. Jacuzzi Brothers, Inc.*, 454 F.2d 284, 285 (8th Cir.1972).

■ The supreme court of Michigan has recognized the "economic reality" of the standard labor broker arrangement. *See Farrell v. Dearborn Mfg. Co.*, 330 N.W.2d 397 (Mich.1982). In affirming the summary judgment, the Michigan Supreme Court explained the labor broker maintains the "formalities of employment" by handling the paperwork and payments incident to employment. *Id.* at 400. However, labor brokers' customers receive a worker and directs that worker's work. *Id.* Under these circumstances, either the labor broker or the customer may be viewed as the employer within the meaning of the workers' compensation statute. *Id.*

This is the reasoning followed by the trial court. We determine the trial court reasoned correctly in applying the criteria of Iowa's case law and the general workers' compensation law to the facts before it.[2]

■ The Minnesota Supreme Court has recognized dual employment within the context of "loaned-servant [loaned employee]" rule. *See Danek v. Meldrum Mfg. & Eng. Co.*, 252 N.W.2d 255, 258–60 (Minn. 1977). The Minnesota Supreme Court basically followed the criteria outlined by our own supreme court in *Henderson. Id.* 252 N.W.2d at 258. In addition, the Minnesota court recognizing a labor broker employee, such as Jones, consents to the brokerage arrangement. The employee thereby relinquishes the right to sue at common law for negligence. *See id.* at 260.

This rationale is applicable in the present case. Due to the nature of Manpower, Jones knew or should have known when he signed up to work at Manpower that he would not actually be working for Manpower, but would be working for Sheller–

Globe. *See Caterpillar Tractor*, 313 N.W.2d at 505 ("The overriding issue is the intention of the parties.").

V. *The Labor Broker and Public Policy.*

With expansion of our technological age and increased federal and state regulations, along with varying employer needs for employees, the labor broker arrangement has become more and more common. Companies are benefited by being able to simply call a labor broker in case of short-term labor shortages. The labor broker then provides from its pool of applicants workers who suit the needs of the prospective employer. The employees are also benefited. They may simply go and request at the central office of the temporary employment service. There is no need to engage in extensive job hunts, because the labor broker and not the employee makes the contacts with the various companies. Further, the labor broker, with their centralized office and particular service, may be able to contact far more employers who need workers than the individual workers may be able to on their own.

In our changing labor environment, labor brokers are filling an apparent need for temporary shortages of laborers at crucial times. The employee knows at the beginning that he or she will be working for someone other than the temporary labor broker. In many respects, the labor broker acts as a mere conduit for the person who desires employment and the company that is looking for prospective employees.

■ Nor do we find any public policy interest subverted by the trial court's ruling. The employee retains full worker's compensation coverage. The employer, through Manpower, provides for such coverage. Thus, any injury to the employee while acting in the course of employment is covered in the usual manner under Iowa's workers' compensation statutes.

---

**2.** Although in a somewhat different context, Iowa has recognized that for workers' compensation purposes an employee may have more than one employer. In the *Caterpillar Tractor* case, former Justice McCormick, writing for the majority, states:

> Finally, an employee may have more than one employer. In that situation the worker may be an employee of one employer for the purpose of certain activities but the employee of another employer while doing other work. *Caterpillar Tractor*, 313 N.W.2d at 506.

Iowa workers' compensation statutes provide a full and fair remedy. The employer obtains the benefit of not being liable for common law negligence for injuries to an employee. The employee obtains the benefit of having full workers' compensation coverage for injuries occurring while in the scope of his or her employment. These benefits, of course, are paid to the employee regardless of fault.

### VI. *Conclusion.*

We determine the trial court correctly applied the law to the facts before it. Accordingly, we determine there is no genuine dispute of material fact present in this case. We further determine Jones was an employee both of Manpower and Sheller–Globe while working for Sheller–Globe in contract with a labor broker. The exclusive remedy available to Jones, an employee in a labor broker situation, is provided by the workers' compensation statute, and a separate tort action against Sheller–Globe Corporation, the customer of the labor broker, may not be maintained. Accordingly, we affirm the trial court's grant of summary judgment in this case.

Costs of this appeal are taxed to the appellant.

AFFIRMED.

All Judges concur, except SCHLEGEL, J., who dissents.

SCHLEGEL, Judge (dissenting).

The majority affirms the trial court's grant of summary judgment. I respectfully dissent. I believe there is an issue of fact as to the degree of control held by Sheller–Globe over Jones as opposed to the degree of control held by Manpower.

The supreme court set forth the factors by which to determine whether an employer-employee relationship exists in *Henderson v. Jennie Edmundson Hosp.,* 178 N.W.2d 429, 431 (Iowa 1970):

(1) the right of selection, or to employ at will (2) the responsibility for the payment of wages by the employer (3) the right to discharge or terminate the relationship (4) the right to control the work, and (5) is the party sought to be held as the employer the responsible authority in charge of the work for whose benefit the work is performed.... We recognize the overriding element of the intention of the parties as to the relationship they are creating may also be considered.

Utilizing this test and viewing the evidence in the light most favorable to Jones, *Thorp Credit, Inc. v. Gott,* 387 N.W.2d 342, 343 (Iowa 1986), I find reasonable minds could differ on how the issue should be resolved.

The Wage Master Service Agreement between Manpower and Sheller–Globe gave Manpower the right to select employees: "this arrangement shall in no way affect the right of Manpower in its sole discretion as employer to hire and terminate employees." In addition, Manpower had the responsibility for the payment of wages and a right to control the work in part. The agreement provided a Manpower employee cannot work more than forty hours per week and Sheller–Globe "will not permit any Manpower employee to operate any motor vehicle or machinery of any kind" without first obtaining Manpower's prior written consent. With regard to the intent of the parties, Sheller–Globe answered interrogatories by stating Jones was an employee of Manpower at the time of the accident.

Reasonable minds could differ as to whether the above situation meets the *Henderson* test, showing an employee-employer relationship between Jones and Manpower. Because *Henderson* applies here, it is unnecessary to delve into the rules of other jurisdictions. I would reverse the trial court's grant of summary judgment.