**IN THE COURT OF APPEALS OF IOWA**

No. 14-1765
Filed August 19, 2015

**MONTE M. THOMPSON,**
Plaintiff-Appellant,

**vs.**

**ATI PRODUCTS, INC.,**
Defendant-Appellee.
_____

Appeal from the Iowa District Court for Sioux County, James. D. Scott, Judge.

Plaintiff appeals from the district court's grant of the defendant's motion for summary judgment. **REVERSED AND REMANDED.**

David A. Scott of Cornwall, Avery, Bjornstad, Scott & Davis, Spencer, for appellant.

Michael J. Frey of Hellige, Frey & Roe, R.L.L.P., Sioux City, for appellee.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**MCDONALD, J.**

Monte Thompson was employed by Aventure Staffing and Professional Services, LLC. Aventure is a labor broker that, among other things, assigns its employees to perform work on a temporary basis for its customers. Thompson was one such employee. On July 29, 2010, Thompson was seriously injured on his first day of work at A & I Products, the corporate predecessor of ATI Products (hereinafter "ATI"). Thompson had been placed at ATI's facility by Aventure. Thompson filed a claim for and received workers' compensation benefits through Aventure. He filed this suit against ATI for negligence arising out of the workplace injury. ATI moved for summary judgment on the grounds it was Thompson's "special employer" as a matter of law and Thompson's negligence claim was thus barred by the exclusive remedy provision in the workers' compensation code. *See* Iowa Code § 85.20 (2013). The district court determined "[n]o genuine dispute of material fact remains that [Thompson] and [ATI] had entered into an implied contract of employment at the time of [Thompson's] injury." The district court granted ATI's motion for summary judgment. Thompson timely filed this appeal.

I.

We review a district court's grant of summary judgment for corrections of errors at law. *See* Iowa R. App. P. 6.907; *Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 500 (Iowa 2013). A district court "properly grants summary judgment when the moving party demonstrates there is no genuine issue of material fact and that [the moving party] is entitled to judgment as a matter of

law." *Boelman*, 826 N.W.2d at 501. "[W]e examine the record in the light most favorable to the nonmoving party. We afford the nonmoving party every legitimate inference that can be reasonably deduced from the evidence, and if reasonable minds can differ on how the issue should be resolved, a fact question is generated" and summary judgment is not proper. *Id.* (citations and internal quotation marks omitted). An inference is legitimate if it is "rational, reasonable, and otherwise permissible under the governing substantive law." *See Phillips v. Covenant Clinic*, 625 N.W.2d 714, 718 (Iowa 2001). An inference is not legitimate, however, if it is based on speculation or conjecture. *See id.*

## II.

Iowa's workers' compensation scheme provides "the exclusive and only rights and remedies of the employee" arising out of a work-related injury "against the employee's employer." Iowa Code § 85.20. An employee is precluded from maintaining "any other action other than workers' compensation against the employer . . . for injury arising while the employee is acting in the course of his employment." *Jones v. Sheller-Globe Corp.*, 487 N.W.2d 88, 90 (Iowa Ct. App. 1992). Section 85.61(11) defines "worker" or "employee" to include "a person who . . . works under contract of service, express or implied . . . for an employer."

"[A]n employee may have more than one employer." *Caterpillar Tractor Co. v. Shook*, 313 N.W.2d 503, 506 (Iowa 1981). "[T]he threshold determination in deciding whether a worker falls into the workers' compensation scheme is whether the worker entered into a contract of hire, express or implied." *Parson v. Procter & Gamble Mfg. Co.*, 514 N.W.2d 891, 893 (Iowa 1994). "The question of

whether a contract of hire exists is ordinarily one of fact," and "in cases involving the question of whether an employee of a general employer became the employee of a special employer, the presumption is that the general employer continues as the sole employer." *Id.* at 893-94. Our supreme court has treated the employer-employee relationship question as one of contract law and stated "[t]he overriding issue is the intention of the parties." *Shook*, 313 N.W.2d at 505. Our supreme court has also discussed five non-exclusive factors that may serve as an aid in determining whether an employment relationship exists: (1) the right of selection, or to employ at will, (2) responsibility for payment of wages by the employer, (3) the right to discharge or terminate the relationship, (4) the right to control the work, and (5) identity of the employer as the authority in charge of the work or for whose benefit it is performed. *See id.*; *Henderson v. Jennie Edmundson Hosp.*, 178 N.W.2d 429, 431 (Iowa 1970). However, where, as here, the question arises in the context of a borrowed servant situation, the primary focus remains the intent of the parties:

> [W]hen the question concerning the nature of the employment relationship arises in the context of a borrowed servant situation, the primary focus is on the intent of the parties; if the five factors are considered at all, it is merely as an aid in determining whether there is a contract of employment between the employee and the second employer. *See, e.g., Parson*, 514 N.W.2d at 895–97; *Rouse v. State*, 369 N.W.2d 811, 814 (Iowa 1985); *Shook*, 313 N.W.2d at 505.

*Iowa Mut. Ins. Co. v. McCarthy*, 572 N.W.2d 537, 542 (Iowa 1997) (emphasis added).

With those principles in mind, we directly address the question presented. The limited issue before the court is whether the district court erred in concluding

summary judgment record established ATI and Thompson had an employer-employee relationship as a matter of law. Stated differently, when viewing the summary judgment record in the light most favorable to Thompson, including every reasonable inference to be drawn from that record, could a reasonable juror find Thompson was the exclusive employee of Aventure and not a special employee of ATI. *See Boelman*, 826 N.W.2d at 501; *Goodpastor*, 849 N.W.2d at 6. Based on the controlling *Parson* decision, we conclude that a reasonable juror could so find and that the district court erred in granting the defendant's motion for summary judgment.

"In Iowa, a contract will be implied where there has been a mutual manifestation of assent by acts and deeds (rather than words) to the same terms of an agreement." *Swanson v. White Consol. Inds., Inc.*, 30 F.3d 971, 974 (8th Cir. 1994) (citation omitted). "The substance of such a contract must be determined from the acts of the parties in light of the subject matter and the surrounding circumstances." *Id.* We consider the alleged special employer's intent to enter into an employment relationship as well as evidence of the alleged employee's consent to an employment relationship. *See Parson*, 514 N.W.2d at 894-95.

One relevant inquiry includes the legal relationship between the labor broker and its customer. *See id.* at 899 (explaining the contract between the broker and customer could evidence the customer's intent to not enter into an employment relationship with the employee). The language in the contract between Aventure and ATI supports an inference that Thompson remained

exclusively an Aventure employee even while performing work at ATI's facility. The Aventure terms and conditions of service with ATI included this provision:

> CUSTOMER acknowledges that Aventure['s] . . . ability to provide staffing service to CUSTOMER requires a substantial capital investment by Aventure . . . to test, train, and maintain a large staff of personnel. *CUSTOMER further acknowledges that any employee whose name appears on a timecard submitted to Aventure . . . is the employee of Aventure . . .* and that if the CUSTOMER were to hire said employee directly, Aventure . . . would incur substantial loss. CUSTOMER agrees that *in the event CUSTOMER . . . hires said employee prior to the employee's completing 520 hours on the current assignment of the employee by Aventure . . .* to CUSTOMER, CUSTOMER will pay, in addition to the charges for time shown on the current timecard plus all prior invoices a surcharge of (to be determined).

(Emphasis added.)

The division of responsibility between Aventure and ATI with respect to the employee's compensation and benefits also supports an inference that Thompson was exclusively an employee of Aventure. *See Parson*, 514 N.W.2d at 894-95. Aventure administered the payroll function. Time cards were submitted to Aventure and not ATI. Aventure paid all compensation owed its employees. Aventure performed all required federal and state tax withholding. Aventure paid the workers' compensation insurance. Aventure provided temporary insurance options to its employees. Thompson was not eligible to receive health insurance or retirement benefits through ATI.

In considering the nature of the relationship between the labor broker, the customer, and the employee at issue, we should also consider the documents between the employee and the labor broker. Those documents would bear on

the employee's intent. Thompson signed a release of workers' compensation claims with Aventure:

> I understand that [Aventure] provides temporary workers for its customers to work at the customers' project site. In accepting any work assignment, I acknowledge that I am a temporary employee of [Aventure] and am not an employee of [Aventure's] customer.
>
> If I am ever injured in the course of my work for [Aventure], I agree that I will look only to [Aventure's] Workers' Compensation coverage and not [Aventure's] customer for any recovery of workers' compensation benefits. . . . I waive, release, and forever discharge any workers' compensation claim that I may not have or that may later accrue against any customer of [Aventure] which directly or indirectly arises out of any . . . injuries caused by the actions or inactions of [Aventure's] customer which may occur to me while on a temporary work assignment for [Aventure].

The Aventure policies and procedures checklist provides:

> I understand that *I am an employee of Aventure . . . and only I or Aventure . . . can terminate my employment.* When an assignment ends I must report to the Aventure . . . office for my next job assignment.
>
> If for some unexpected reason, such as an emergency or illness, I cannot make it to work or will be late, *I will contact Aventure . . .* two hour prior to start time *so you can call the client and/or find a replacement.*
>
> If I sustain an injury on the job, I will inform the client and Aventure . . . immediately after the accident. Aventure . . . will coordinate with the client and myself to proper procedure for treatment and reporting the accident.

(Emphasis added.) The Temporary Benefits Acknowledgement form provides "in consideration of my assignment by Aventure Staffing & Professional Services, LLC ('Employer') at the Client Company, I agree that I am solely an employee of Employer for benefit plan purposes, and that I am eligible only for such benefits as Employer may offer to me as its employee." In sum, when viewed in the light most favorable to Thompson, the documents defining the relationship between

Aventure, ATI, and Thompson all support an inference that Thompson was exclusively an employee of Aventure and not ATI.

There is little in the summary judgment record regarding the issue of whether ATI and Thompson had an implied contract of employment despite the employment documents tending to show to the contrary. In considering Thompson's intent to enter into an employment relationship with ATI, we may consider Thompson's testimony and his understanding of his relationship with Aventure and ATI. *See id.* at 895. At the time Thompson applied at Aventure, he was incarcerated at the residential treatment facility ("RTF") in Sheldon, Iowa. He applied at Aventure because it was one of the few places the RTF allowed inmates to work. After his release from the RTF he planned to return to previous employers such as Midstate Builders or Morton Buildings or to return to being self-employed. He did not plan on continuing to work for Aventure after his release. When Thompson was assigned on a temporary basis by Aventure to work at ATI, he "considered [himself] to be employed by Aventure not [ATI], where [he] was merely a temporary worker."

Thompson and employees of ATI had very little contact due to the timing of the injury. Thompson suffered a devastating injury on the first morning he reported to the ATI job site. There is little evidence regarding any communication between Thompson and ATI. Thompson did not sign any documents provided by ATI. There is little evidence regarding the historical practice between Thompson and ATI that might shed light on this situation. The summary judgment record does show that Aventure employees, generally, worked under

the direction of the defendant's supervisors and at the defendant's supervisors' direction and control. The summary judgment record also shows that Aventure employees at ATI's job site, generally, were not treated differently than ATI's employees with respect to work and work conditions.

ATI argues the "overwhelming majority of jurisdictions have determined customers of labor brokers/temporary employers are protected by the state's workers' compensation act from common law tort liability" and cites more than thirty decisions from jurisdictions around the country as support for that argument. That is all well and good, but the weight of persuasive authority does not allow us to disregard controlling authority. The *Parson* decision provides that the question presented typically is one of fact. On the summary judgment record in this case, in light of *Parson*, we conclude reasonable minds could differ on the question whether Thompson and ATI both had the intent to enter into an employment relationship. *See Goodpastor v. Schwan's Home Serv., Inc.* 849 N.W.2d 1, 6 (Iowa 2014) ("Even if facts are undisputed, summary judgment is not proper if reasonable minds could draw from them different inferences and reach different conclusions."). Accordingly, the district court erred in determining the existence of an implied contract as a matter of law and in granting summary judgment for ATI. *See Parson*, 514 N.W.2d at 894 ("Because the determination of the employment status of a workers' compensation claimant by the Industrial Commissioner is one of fact, we do not see why a similar determination by the district court becomes one of law."); *Velazquez v. Hydro Conduit Corp*, No. 05-0603, 2006 WL 469351, at *3 (Iowa Ct. App. Mar. 1, 2006) (reversing summary

judgment for alleged special employer under similar facts where agreement stated the broker's employee shall not be considered the customer's employees).

III.

For the foregoing reasons, we reverse the district court's grant of summary judgment and remand this case for further proceedings.

**REVERSED AND REMANDED.**