Argued May 22, affirmed June 23, 1975

ROMANOSKY, *Petitioner, v.* EMPLOYMENT
DIVISION ET AL, *Respondents.*

536 P2d 1277

*Richard T. Aboussie,* Legal Aid Service, Multnomah
Bar Association, Inc., Portland, argued the cause and
filed the brief for petitioner.

*Timothy Wood,* Assistant Attorney General, Salem,
argued the cause for respondent Employment Divi-
sion. With him on the brief were Lee Johnson, Attor-
ney General, and W. Michael Gillette, Solicitor Gen-
eral, Salem.

*Richard C. Hunt,* Portland, argued the cause for
respondent Sears, Roebuck and Co. With him on the

brief were Dezendorf, Spears, Lubersky & Campbell, Portland.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

FOLEY, J.

Petitioner-claimant was discharged on September 13, 1974, by Sears, Roebuck and Co. for misconduct in connection with his work. An administrator's decision of October 7, 1974, disqualified claimant from unemployment benefits under ORS 657.176. He requested a hearing and the hearings referee concluded that "* * * claimant's acts can[not] be considered misconduct as that term is understood under employment insurance law," setting aside the administrator's decision. On review at the instance of the employer the Employment Appeals Board disagreed with the referee and found that claimant was discharged for misconduct in connection with his work and was thus disqualified from benefits under the provisions of ORS 657.176(2)(a). Claimant petitioned this court for judicial review. ORS 657.282.

Claimant was employed as a security operator in the security department for Sears, Roebuck and Co. In that position his duties included apprehension of shoplifters and prevention of theft by employes. He was directed by his employer to make a special surveillance at 6 a.m. on September 10, 1974, when the maintenance employes left the store. It was suspected that a black person who was a night maintenance man might attempt to leave the store with some merchandise at the end of the shift. At 1:00 a.m., prior to the 6 a.m. surveillance duty, claimant stated that he met a female named "Betty" at a bar where she asked him to buy her a drink. At 2 a.m. they went to claimant's

apartment. At about the same time they were joined by claimant's estranged wife. The three spent from 2 a.m. until about 6 a.m. at claimant's apartment. Claimant had a few drinks but was not drunk and he stated that during the five hours while with "Betty" she had five beers.

Just prior to 6 a.m. claimant strapped on his gun in the presence of "Betty" and drove to the Sears store accompanied by "Betty" and his estranged wife. He parked his car near the loading dock. He testified that he told both women to stay in the car, and, armed with his gun and binoculars, crossed the street to find a convenient spot from which to make his surveillance. Shortly after claimant left the car, "Betty" got out of the car, ran up to the door at Sears, banged upon it, and indicated to the people who came out of the building that there was a man in the bushes across the street who had a gun and "[w]as going to shoot the first nigger that walked out * * * the door."

Claimant saw "Betty" talking with a Sears' employe, Jim Muncy, chief engineer, and saw Muncy return to the store, followed by "Betty." Claimant recognizing that "there was something going on," got in his car and drove around the block, at which time he saw a police car at Sears. He then drove away without stopping to attempt to correct the situation for which he had set the stage. When asked why he didn't stop, he said: "* * * [I]t would cause problems. I didn't know about more problems or whether they had called the police because she was—was drunk and to take her away and what —." Claimant denied that he had told "Betty" that he "[w]as going to shoot the first nigger that walked out * * * the door." He did not, however, offer any other explanation of what may have prompted her to leave the car and make the declaration she did.

The sole question on appeal is whether claimant's actions constituted "misconduct" within the meaning of ORS 657.176(2)(a). *Cf. Georgia-Pacific v. Employment Div.*, 21 Or App 135, 533 P2d 829 (1975).

In *Bauer v. Morgan*, 16 Or App 132, 135, 517 P2d 689, Sup Ct *review denied* (1974), the court recognized that "misconduct" as used in ORS 657.176 is defined as " '* * * deliberate violation[s] * * * [or] disregard of standards of behavior which the employer has the right to expect of his employee * * *.' " (Brackets theirs.) Other jurisdictions have applied a similar definition in unemployment compensation cases. *See* 76 Am Jur2d 945, Unemployment Compensation § 52 (1975).

In the present case claimant's actions not only disregarded a standard of behavior which his employer had the right to expect but also evidenced a substantial disregard of the employer's interest and the employe's duties and obligations to his employer.

Claimant, as a security guard, was assigned to keep an employe under surveillance when the employe was leaving work. In performing his assignment claimant brought two women along with him in his car. One of the women was intoxicated. While he was conducting his surveillance, the intoxicated woman got out of the car and caused a disturbance. As a result of the disturbance other employes became involved and the police were called. The Employment Appeals Board concluded that it was not necessary to decide whether claimant was responsible for the disturbance. Claimant, after observing the disturbance, left the scene. The Employment Appeals Board held that the claimant, being aware of the disturbance involving one of his companions, had a duty to his employer to attempt to correct the situation and his failure to accept this responsibility under the circumstances constituted

misconduct in connection with his work. There was substantial evidence to support the determination of the Employment Appeals Board.

Affirmed.