Argued November 22, affirmed December 27, 1976, reconsideration
denied February 2, petition for review denied March 22, 1977

GIESE, *Respondent,*

*v.*

EMPLOYMENT DIVISION et al, *Petitioners.*

(No. 76-AB-88, CA 5928)

557 P2d 1354

*Thomas H. Denney,* Assistant Attorney General,

Salem, argued the cause for petitioners. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Dean P. Gisvold,* Portland, argued the cause for respondent. With him on the brief were Hardy, Buttler, McEwen, Weiss & Newman, Portland.

Before Fort, Presiding Judge, and Thornton and Richardson, Judges.

THORNTON, J.

## THORNTON, J.

The sole issue presented here is whether claimant's unlawful activities during off-duty hours constituted "misconduct connected with his work," disqualifying him from receiving unemployment compensation. ORS 657.176.

Petitioners Portland State University and the Employment Division seek judicial review of an order of the Employment Appeals Board holding that the university's discharge of claimant was not for misconduct connected with his work.

There is no dispute as to the facts. Claimant was employed by the university as a professor of French from September 1965 until his suspension in November 1974. At the time of his suspension he had obtained tenure. On November 21, 1974, claimant was convicted in the United States District Court for Oregon for conspiring with others to explode devices designed to damage or destroy certain federal buildings in this state. The conviction is presently on appeal.

As a result of this felony conviction, claimant was suspended in November 1974 and discharged in April 1975 by the university, subject to reinstatement if his conviction is reversed on appeal. The discharge was reviewed by the State Board of Higher Education pursuant to claimant's appeal and was upheld in August 1975.

Following his discharge claimant applied for unemployment benefits. Benefits were denied by Administrator's Decision in October which, in turn, was, on appeal, upheld after hearing before a referee. The referee found that the claimant was discharged for "misconduct connected with his work," ORS

657.176(1) and (2)(a),[1] based on the following Findings of Fact:

"* * * (1) Claimant worked for Portland State University as a tenured French professor from September, 1965, until suspended in November, 1974. (2) At claimant's request, official notice is taken of the following facts: (a) Claimant was indicted, tried, and convicted of conspiring to commit offenses against the United States; (b) because of that felony conviction, entered in November, 1974, claimant was discharged by Portland State University in April, 1975; (c) the discharge was reviewed at claimant's request by the State Board of Higher Education and was upheld. (3) The above conviction is presently on appeal."

On appeal the Employment Appeals Board reversed the referee, concluding:

"* * * We do not agree with the decision of the referee in this matter. Claimant was discharged, but not for misconduct connected with his work."

Petitioners contend that where a person is employed as a professor by a state-supported institution of higher learning, a conviction for conspiring to destroy government buildings calls into question not only his continued right of access to the government buildings in which he is employed, but also his fitness to continue as a teacher, guide and counselor to his students, and as a representative of the university.

Where the facts are not disputed and the sole question is one of law, we are required under ORS 183.480(7)(a) to affirm unless we find that the Board's

---

[1] ORS 657.176(1) and (2)(a) provide:

"(1) An authorized representative designated by the administrator shall promptly examine each claim to determine whether an individual is subject to disqualification as a result of his separation, termination, leaving, resignation, or disciplinary suspension from work or as a result of the individual's failure to apply for or accept work and shall promptly enter an administrator's decision if required by subsection (3) of ORS 657.265.

"(2) If the authorized representative designated by the administrator finds:

"(a) The individual has been discharged for misconduct connected with his work * * *."

decision is "unlawful in substance or procedure * * *." *Georgia-Pacific v. Employment Div.,* 21 Or App 135, 533 P2d 829 (1975).

For reasons which follow we conclude that the Board's decision allowing benefits must be upheld.

As we noted at the outset, the statutory ground for disqualification is "misconduct connected with his [employe's] work."[2] ORS 657.176(2)(a) and (4). Accordingly, even though the employer may be amply justified in dismissing the employe, as is the case here, that justification is not always grounds for denying unemployment compensation benefits to the dismissed worker. This rule is well illustrated by a number of decisions of this court. *See,* for example, *Georgia-Pacific v. Employment Div., supra; Geraths v. Employment Division,* 24 Or App 201, 544 P2d 1066 (1976).

In *Georgia-Pacific* we held that a mill worker who had engaged in a scuffle with a fellow employe and was subsequently fired for violating an unwritten rule against fighting had not engaged in "misconduct" within the meaning of the above statute.

Similarly in *Geraths,* we ruled that an employe who left work for the day on a personal errand without express permission was not guilty of disqualifying "misconduct" under the same statute. Again, in *Babcock v. Employment Div.,* 25 Or App 661, 550 P2d 1233 (1976), a mill worker was discharged for overstaying a brief temporary leave of absence from work which had been granted by his employer. We held that this was not disqualifying misconduct. *Cf., Romanosky v. Employment Div.,* 21 Or App 785, 536 P2d 1277 (1975); *Balduyck v. Morgan,* 9 Or App 363, 497 P2d 377 (1972).

---

[2]So far as we can determine the term "misconduct connected with his work" was inserted into our unemployment compensation law in 1937. Oregon Laws 1937, ch 398, § 4. When first enacted in 1935, our unemployment compensation statute simply provided that a claimant could be disqualified for "proven misconduct." Oregon Laws 1935 (Spec Sess), ch 70, § 4(b)(2).

The record below shows that following the decision of the administrator denying benefits to claimant, claimant requested a hearing. The hearing was held on December 2, 1975. Although notified of the hearing the employer did not appear. The employer presented no evidence at the hearing.

■ As we held in *Babcock v. Employment Div., supra,* where an employer charges a claimant with such misconduct as would bring about his disqualification from unemployment compensation benefits, it is incumbent upon the employer to sustain the charge by a reasonable preponderance of the evidence.[3]

Here, unlike in *Geraths, Georgia-Pacific* and *Babcock,* the misconduct was sufficiently serious. It was not, however, shown to be connected with claimant's work; rather it was conduct off the working premises and outside the course and scope of claimant's employment. We conclude that the phrase "connected with his work" was added to our statute by the legislature to draw a distinction between misconduct while off-duty and misconduct in the course and scope of employment.

*Neely v. Brown,* 161 So2d 414 (La App 1964), and *Smith v. Brown,* 147 So2d 452 (La App 1962), are both cases in which off-duty conduct was held not to be work-connected. In *Neely,* claimant was discharged after he failed to pay a dental bill. The work had been arranged for by the employer. The court held that the failure of the employe to pay the dental bill was not disqualifying "misconduct" within the meaning of the state's unemployment compensation law. In *Smith,* claimant was discharged when he spent 21 days in jail for nonsupport. The same court held that this was not grounds for denying him unemployment benefits. *Contra: See, O'Neal v. Employment Security Agency,* 89 Idaho 313, 404 P2d 600 (1965), holding that a postal

---

[3]The preceding language is taken from 76 Am Jur2d 945, 946, Unemployment Compensation § 52 (1975), and was quoted with approval in *Babcock v. Employment Div.,* 25 Or App 661, 664, 550 P2d 1233 (1976).

employe who was discharged following a felony conviction on a morals offense committed outside his employment was guilty of disqualifying misconduct. However, in *O'Neal* the post office regulations prohibited "Infamous, dishonest, immoral, or notoriously disgraceful conduct * * *." Claimant admitted violating these regulations and was discharged on this account.

■ We believe that where the conduct or activities for which the claimant is discharged occurred off the working premises and outside the course and scope of employment, the employer must, in order to show that the conduct is work-connected, point to some breach of a rule or regulation that has a reasonable relation to the conduct of the employer's business.

■ In the case at bar there is nothing in the record as to the existence of regulations of Portland State University or the State Board of Higher Education governing off-duty conduct of university employes. *See, Gregory v. Anderson,* 14 Wis2d 130, 109 NW2d 675, 89 ALR2d 1081 (1961); Baldikoski, Notes, *Unemployment Compensation—Misconduct—Disqualification for Violation of an Off-Duty Regulation,* 1962 Wis L Rev 392.

Accordingly, where, as here, the employer or the Employment Division fails to establish that the misconduct for which the claimant was dismissed was "misconduct connected with his work," grounds for disqualification have not been established and the claim must be allowed if claimant is otherwise qualified under the unemployment insurance statutes. *Babcock v. Employment Div., supra.*

We are not unmindful of a statement by claimant's attorney during the hearing before the State Board of Higher Education that claimant became associated with his alleged co-conspirators while he was a counselor at the Oregon State Correctional Institution (OSCI) in Salem. It may be argued that this establishes that claimant's misconduct was "connected with his work." We cannot agree. Without some proof that this off-campus association and counseling with OSCI

[ 935 ]

inmates was in some way connected with his assigned duties as a French teacher at Portland State University, this would not be proof that claimant was dismissed for "misconduct connected with his work" within the meaning of ORS 657.176.

*U.C.B.R. v. Ostrander,* 21 Pa Commw Ct 583, 347 A2d 351 (1975), relied upon by the state, is inapposite. Ostrander was discharged from work because of his conviction on a federal charge of conspiracy to interfere with the civil rights of another trucker during a strike-related altercation. A reading of the Pennsylvania decision establishes that Ostrander was not denied benefits for 'misconduct in connection with his work,' but under another provision of the Pennsylvania statutes which limits unemployment benefits to employes who lose their jobs "through no fault of their own." 347 A2d at 352. While claimant would be disqualified under the Pennsylvania law, the Oregon statutes do not contain such a provision.

Affirmed.

**FORT, J.,** dissenting.

Petitioners Portland State University and the Employment Division seek judicial review of an order of the Employment Appeals Board holding that the university's discharge of claimant was not for misconduct connected with his work.

Petitioners seek judicial review pursuant to ORS 657.282, assigning as error the board's conclusion that claimant's misconduct was not connected with his work.

In *Romanosky v. Employment Division,* 21 Or App 785, 788, 536 P2d 1277 (1975), we stated:

> "In *Bauer v. Morgan,* 16 Or App 132, 135, 517 P2d 689, Sup Ct *review denied* (1974), the court recognized that 'misconduct' as used in ORS 657.176 is defined as ' "* * * deliberate violation[s] * * * [or] disregard of standards of behavior which the employer has the right

to expect of his employee * * *." ' (Brackets theirs.) Other jurisdictions have applied a similar definition in unemployment compensation cases. *See* 76 Am Jur2d 945, Unemployment Compensation § 52 (1975)."

The petitioners contend that where a person is employed as a professor by a state-supported institution of higher learning, a conviction for conspiring to destroy government buildings calls into question not only his continued right of access to the government buildings in which he is employed, but also the implication such a conviction may reasonably have upon his fitness to continue as a teacher, guide and counselor to his students, and as a representative of the university. That such a conclusion has much reason for its basis is indicated by the evidence in the record here.

In his appearance before the State Board of Higher Education, the attorney for claimant stated at that hearing:

"* * * that Dr. Giese was a counselor at the Oregon State Correctional Institution. His present legal problems resulted from the fact that certain of the individuals from the institution were again in difficulty after their release. He said Dr. Giese had been associated with them and was charged with conspiring with them * * *."

Certainly therefore it cannot be doubted that misconduct of the kind demonstrated by his conviction can indeed be "connected with his work" within the meaning of ORS 657.176(2)(a). 76 Am Jur 2d, Unemployment Compensation § 52. *See also: U.C.B.R. v. Ostrander*, 21 Pa Commw Ct 583, 347 A2d 351 (1975); *O'Neal v. Employment Security Agency*, 89 Ida 313, 404 P2d 600 (1965).

Here the regulations of the State Board of Higher Education (41.330(1)) expressly authorize, though they do not require, termination of employment for conviction of a felony during the period of employment. The rationale demonstrating that there may indeed be and here was a connection with a professor's

[ 937 ]

work and his conviction of the particular felony of which claimant was convicted is concisely set forth in the findings, expressly concurred in by President Blumel of the university, of the ad hoc Hearing Committee of the university which considered this matter when it said:

"'* * * Conspiracy to commit an act of destruction is inconsistent with that commitment to persuasion, rational discourse, and the rule of law which the University has a right to expect of members of the faculty and the community has a right to expect of the University.' * * *"

I cannot believe, although it does not trouble to say so, that the majority would hold such a crime as unconnected with his work, if it involved the very university building in which he taught, or indeed any other of that university's buildings. In my opinion it matters not whether his crime involved some building of his immediate employer or any other public building. The essence of the crime is intentional resort to destructive violence contrary to law. Such an act is not simply an expression of opinion. It is an assertion of power by force and violence contrary to law.

Nothing in the Unemployment Compensation Act causes me to believe that the legislature intended to reward a teacher lawfully discharged, as the majority here concedes, for committing such a crime by granting him from the public purse unemployment compensation in the same manner and amount as it would any other public employe who lost his job through no fault of his own.

Accordingly, I conclude that the felony of which claimant was convicted was indeed sufficiently "connected with his work" to bring his discharge within the meaning of ORS 657.176(2)(a).

I would reverse, and therefore most vigorously but respectfully dissent.