Gary G. KEHDE, Appellee,

v.

IOWA DEPARTMENT OF JOB SERVICE, Appellant.

No. 66259.

Supreme Court of Iowa.

April 21, 1982.

---

Considered by LeGRAND, P. J., and HARRIS, McCORMICK, LARSON and SCHULTZ, JJ.

SCHULTZ, Justice.

Respondent, Iowa Department of Job Service, appeals from a decision by the district court on judicial review allowing petitioner, Gary G. Kehde, to recover unemployment benefits. The court's decision reversed the Department's disqualification of Kehde under section 96.5(2), The Code, from eligibility for benefits because of misconduct. The Department contends the district court: (1) lacked jurisdiction because Kehde failed to exhaust his administrative remedies by applying for a rehearing before petitioning for judicial review, which it claims was required by section 96.6(8), The Code, and (2) erred in holding that the decision of its appeal board to give no effect to an attempt by Kehde's former employer, Dubuque Packing Company (hereinafter referred to as Dubuque Pack), to withdraw its protest to Kehde's claim was arbitrary, capricious, and an abuse of discretion.

We hold that the district court had jurisdiction but erred in reversing the Department on the basis of its refusal to permit Dubuque Pack to withdraw its protest. We also hold that the Department correctly disqualified Kehde for misconduct. Accordingly, we reverse and remand.

On October 19, 1979, Kehde was discharged by Dubuque Pack because a night supervisor found him holding a lit marijuana cigarette on company premises during a work break on October 12, 1979. Thereafter, his union instituted a grievance proceeding, which was submitted to arbitration.

On January 14, 1980, Kehde filed a claim for unemployment benefits under Iowa Employment Security Law, chapter 96, The Code. Dubuque Pack filed a protest to this claim on January 16, stating that Kehde had been discharged for misconduct. On January 31, following a fact-finding interview, a claims deputy denied Kehde benefits, finding that he had been "discharged for violation of a known company rule." This decision was affirmed by a hearing

Walter F. Maley, Blair H. Dewey, and Joseph L. Bervid, Des Moines, for appellant.

officer on May 18, after an evidentiary hearing. The hearing officer found that Kehde was discharged for possession of a marijuana cigarette, which violated a known company rule and constituted misconduct under section 96.5(2)(a), The Code, thereby disqualifying him from eligibility for benefits. On May 30 the hearing officer's decision was affirmed by the appeal board, which adopted the findings of fact and conclusions of law of the hearing officer in all material respects.

Throughout the administrative proceedings, Kehde maintained that he was unaware of a company rule prohibiting an employee from being under the influence or in possession of controlled substances. He also claimed that he was not under the influence of marijuana and asserted that the cigarette belonged to another employee.

On June 3, apparently pursuant to the arbitration decision of the grievance filed by Kehde's union, Dubuque Pack notified the appeal board that it officially rescinded its protest to Kehde's claim for unemployment benefits. On June 6, however, the appeal board sent a letter to Dubuque Pack stating that an "employer may not withdraw a protest if a hearing has been held and a decision has been issued." The appeal board then treated the June 3 letter as an application for rehearing and subsequently notified Dubuque Pack that its application had been denied because "no substantial reason was given why the new or additional evidence was not submitted at the time of the evidentiary hearing."

On July 17 Kehde, without having applied for a rehearing under section 96.6(8), The Code, petitioned the district court for judicial review. The court concluded that the Department's refusal to give any effect to Dubuque Pack's withdrawal of its protest was unreasonable, arbitrary, and an abuse of discretion, which prejudiced Kehde's substantial rights and therefore constituted reversible error, *see* § 17A.19(8)(g), The Code. The court reversed the decision of the appeal board and remanded the matter to the Department "to give [Kehde] the benefits [he would

have been] entitled to if Dubuque Packing Company had not protested [his] claim for benefits." The Department then appealed to this court.

I. *Exhaustion of Administrative Remedies.* The Iowa Administrative Procedure Act (IAPA) requires a party to exhaust all administrative remedies to be entitled to judicial review of agency action. § 17A.19(1), The Code. The Department contends that by failing to apply to the appeal board for a rehearing under section 96.6(8), The Code, Kehde did not exhaust all of his administrative remedies and the district court therefore lacked jurisdiction to review the contested case.

The IAPA stipulates that "[a]ny party may file an application for rehearing, stating the specific grounds therefor and the relief sought, within twenty days after the issuance of any final decision by the agency in a contested case." § 17A.16(2), The Code. In *Ellis v. Iowa Department of Job Service*, 285 N.W.2d 153 (Iowa 1979), this court rejected the contention that a claimant in a chapter 96 contested case proceeding had not exhausted her administrative remedies by seeking a rehearing before the appeal board under section 17A.16. We held that an application for rehearing was not a prerequisite to judicial review under section 17A.16(2). *Id.* at 155–56.

■ An amendment to section 96.6(8) was not effective when the events in *Ellis* transpired, however, and the court therefore had "no occasion . . . to deal with the statute." *Id.* at 156. That amendment to section 96.6(8) provides in part: "An application for rehearing shall be filed pursuant to section 17A.16." *See* 1979 Session, 68th G.A., ch. 33, § 14. The Department contends this provision imposes a mandatory duty to apply for a rehearing as a condition precedent to seeking judicial review. We disagree.

Although the word "shall" normally implies a mandatory duty, especially when used in legislation, *see Webster's Third New International Dictionary* 2085 (1966), it is unclear whether the language of section 96.6(8) at issue requires an application for

rehearing in all cases or merely conformity with the requirements of section 17A.16 *if* an application for rehearing is filed. We conclude the latter construction was intended by the legislature. The basis for this conclusion is two-fold.

First, the sentence in section 96.6(8) following the disputed language, also part of the 1979 amendment, provides: "A petition for judicial review of a decision of the department or of the appeal board shall be filed pursuant to section 17A.19." We do not believe it can be seriously contended that by virtue of the use of the word "shall" the legislature intended to make judicial review a mandatory requirement in all contested cases under chapter 96, even though not desired by the parties. The logical construction of the provision obviously is that *if* judicial review is desired the petition must be filed pursuant to the requirements of section 17A.19.

■ It is a rule of statutory construction that when the same or substantially the same phrases appear in a statute, they will be given a consistent meaning absent a contrary legislative intent. *Schooler v. United States*, 231 F.2d 560, 563 (8th Cir. 1956); *Baker v. Salomon*, 31 Ill.App.3d 278, 281, 334 N.E.2d 313, 316 (1975). Consequently, we conclude that the legislature intended the term "shall," as used in the contested language of section 96.6(8), to become operative only if a petition for rehearing is filed.

Second, the construction advocated by the Department is contrary to the provisions of the IAPA. Section 17A.1(2) states that one of the purposes of the IAPA is "to simplify government by assuring a *uniform* minimum *procedure to which all agencies will be held* in the conduct of their most important functions." (Emphasis added). As already noted, under section 17A.16(2) application for a rehearing is not a prerequisite to

judicial review. *Ellis*, 285 N.W.2d at 155–56. The construction advocated by the Department therefore derogates from a uniform judicial review procedure. Furthermore, section 17A.23 provides in part: "If any other statute now in existence or hereafter enacted diminishes any right conferred upon a person by this chapter ..., this chapter shall take precedence unless the other statute expressly provides that it shall take precedence over all or some specified portion of this named chapter." Although other portions of section 96.6(8) preempt two specified IAPA provisions, the preemptions expressly name the IAPA provisions they take precedence over and do not involve a diminution of rights.[1] The disputed language does not purport to preempt section 17A.16(2). Because the disputed language of section 96.6(8), as construed by the Department, would diminish the right to judicial review, it must expressly provide that it takes precedence over the IAPA. Since it does not, the disputed language cannot be construed to take precedence over section 17A.16(2).

We therefore conclude that the amendment to section 96.6(8) does not legislatively overrule *Ellis*. Application for rehearing under that provision is not a condition precedent to judicial review of a contested case under chapter 96.

II. *Withdrawal of protest.* The Department contends the district court erred in concluding that its refusal to give any effect to Dubuque Pack's withdrawal of its protest was unreasonable, arbitrary, and an abuse of discretion. We agree.

■ In reversing the contested case and remanding it to the Department to award Kehde benefits as though Dubuque Pack had not protested his claim, the district court apparently assumed that unless there is a protest by the claimant's former em-

---

1. The preemptive provisions of section 96.6(8) are:

> Notwithstanding the terms of the Iowa administrative procedure Act, petitions for judicial review may be filed in the district court of the county in which the claimant was last employed or resides.... Notwithstanding

the thirty-day requirement in section 17A.19, subsection 6, the department shall, within sixty days after filing of the petition for judicial review or within a longer period of time allowed by the court, transmit to the reviewing court the original or a certified copy of the entire record of a contested claim.

ployer, the claimant is entitled to benefits. However, the purpose of a protest is merely to afford an employer the opportunity to respond to a claim and present relevant facts for consideration in determining eligibility for benefits, since the amount of an employer's contributions to the employment security fund, with certain exceptions, is proportionately related to the amount of benefits paid to former employees. *See* § 96.7, The Code. Section 96.6(2) provides that a Department "representative shall promptly examine the claim and any protest thereto and, on the basis of the facts found by the representative, shall determine whether or not such claim is valid" and determine the amount and duration of the benefits, if any, to which the claimant is entitled. Thus, a claimant is not automatically entitled to benefits if the employer does not protest the claim; as section 96.-6(2) provides, eligibility is to be determined "on the basis of the facts found by the representative."

What effect, then, does withdrawal of a protest have on a decision rendered by the appeal board? Since eligibility for benefits is determined on the basis of the facts of the case, the mere withdrawal of a protest would not have any effect. In and of itself, withdrawal certainly would not alter the facts of the case. There may be cases in which an employer's withdrawal of a protest affects the facts, such as when the withdrawal is based upon newly discovered evidence, but there is no indication in the record that this is such a case. Here, withdrawal was irrelevant to the factual determination of eligibility for benefits. Consequently, even if the appeal board erred in refusing to allow Dubuque Pack to withdraw its protest the error was harmless.

III. *Misconduct.* The district court found the Department's failure to give effect to Dubuque Pack's withdrawal of its protest to be reversible error. Consequently, the court found it unnecessary to reach Kehde's contention that the Department's finding that he was discharged for misconduct was not supported by substantial evidence in the record.

Section 96.5(2) provides that a claimant shall be disqualified from eligibility for benefits if the Department finds that the claimant "has been discharged for misconduct in connection with the individual's employment." Although the Iowa Employment Security Act does not define "misconduct," the Department has done so by rule:

> *Misconduct* is defined as a deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

370 I.A.C. § 4.32(1)(a). We have previously stated that this definition accurately reflects the intent of the legislature. *Huntoon v. Iowa Department of Job Services,* 275 N.W.2d 445, 448 (Iowa), *cert. denied,* 444 U.S. 852, 100 S.Ct. 105, 62 L.Ed.2d 68 (1979).

The hearing officer found that Kehde was in possession of marijuana on company premises during a break period, that he thereby violated a known company rule, and that he was discharged for this reason. He concluded this was willful and deliberate disregard for the employer's best interests and constituted misconduct. These findings were adopted by the appeal board.

There is no evidence in the record that Kehde had knowledge of the company rule prohibiting possession or being under the influence of drugs or alcohol. In his claim and at the evidentiary hearing Kehde maintained that he was not aware of the rule, which he said was contained in a recently adopted rule book that had not yet been distributed. The Department's finding that Kehde violated a "known" company rule therefore indicates that it did not believe Kehde's contention that he was unaware of the rule. Such disbelief alone, however, without some other evidence from which knowledge of the rule may be reasonably inferred, is not sufficient to constitute substantial evidence in the record. Nevertheless, there is substantial evidence in the record to support the Department's conclusion that Kehde's possession of the lit marijuana cigarette was willful and deliberate, constituting misconduct within the meaning of section 96.5(2).

Rule 4.32(1)(a) provides that "deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees" constitutes misconduct. Possession of marijuana is a serious misdemeanor that is punishable by imprisonment for not more than six months or by a fine of not more than $1000 or both. § 204.401(3), The Code. At the evidentiary hearing, Kehde initially argued that he did not own the marijuana cigarette and therefore did not possess it; he subsequently conceded possession, however. Although Kehde may contend he was unaware of the company rule, he cannot contend that he did not know his possession was a violation of the criminal law, because everyone is presumed to know the law, *State v. Sonderleiter*, 251 Iowa 106, 109, 99 N.W.2d 393, 395 (1959).

Furthermore, the intoxicating effect of marijuana poses obvious safety risks to an employee who is under the influence of the drug and to coworkers. That Kehde was aware that marijuana is an intoxicant is apparent from his statement denying that he was under the influence: "[W]e did not have time to get high." An employer has a right to expect that an employee will not jeopardize his or her own safety or the safety of coworkers by being intoxicated during work hours. The employer also has a right to expect that the employee will not engage in unlawful conduct on company premises, especially when that conduct may affect the quality of the employee's work. There is substantial evidence in the record to support the conclusion that Kehde deliberately violated these rightful expectations in this case. *Cf. Ervin v. Review Board*, 173 Ind.App. 592, 596–97, 364 N.E.2d 1189, 1192 (1977) (employee's improper sexual advances were breach of duty reasonably owed to employer and constituted misconduct for purpose of disqualification from unemployment benefits); *Romanosky v. Employment Division*, 21 Or.App. 785, 788–89, 536 P.2d 1277, 1279 (1975) (security guard who brought to a surveillance job two females, one of whom was intoxicated and disrupted the surveillance, disregarded standards of behavior that employer had a right to expect and justified disqualification from unemployment benefits).

Commission of a serious misdemeanor on company premises, which may jeopardize the employee's safety or that of coemployees, sufficiently establishes misconduct. *See Danko v. Commonwealth*, 40 Pa. Commw. 387, 389, 397 A.2d 489, 490 (1979) (employee's removal of tires from employer's warehouse constituted misconduct justifying disqualification from unemployment benefits even though employee was not prosecuted for commission of crime). Accordingly, the Department was required to disqualify Kehde from eligibility for benefits under section 96.5(2)(a).

This matter is remanded to the district court for entry of an order consistent with the provisions of this opinion.

REVERSED AND REMANDED.