Karen **HARTMAN**, Petitioner–
Appellee/Cross–Appellant,

v.

**CLARKE COUNTY HOMEMAKERS** and
Bituminous Insurance Cos., Respondents–
Appellants/Cross–Appellees.

No. 93–0598.

Court of Appeals of Iowa.

May 26, 1994.

William D. Scherle of Hansen, McClintock & Riley, Des Moines, for appellants.

Steven C. Jayne, Des Moines, for appellee.

Heard by HAYDEN, P.J., and CADY and HUITINK, JJ.

CADY, Judge.

This workers' compensation appeal presents an issue of first impression. We are asked to decide whether earnings received as an independent contractor may be included in computing the compensation rate of a worker injured in part-time covered employment. We conclude that such earnings must be excluded from the computation. The remaining issues for review relate to apportionment of liability among non-parties and the determination of an industrial disability award.

Karen Hartman provided in-home health care for Nancy Dinham under a program administered by the Iowa Department of Human Services. Dinham suffered from multi-ple sclerosis. Karen is forty years old. She is married and has no dependent children.

Karen was injured on September 8, 1989, while providing care for Dinham. She had been instructed by Dinham's treating physician to regularly scrub Dinham's bed to prevent the onset of infection. Karen intended to move Dinham from the bed into another room while she performed this task. As Karen assisted Dinham out of her bed, Dinham's legs gave way. Karen instinctively shoved her back into the bed to prevent her from falling. Karen's actions resulted in an injury to her back.

At the time of the accident, Karen was an employee of the Clarke County Homemakers Services (Clarke County) as a home health aide providing care to Dinham. She also provided cleaning for two businesses, Iowa Assembly and Murray Products. Karen often hired others to help her at the businesses, directed their activities, and paid them.

Shortly after her injury, Karen was examined by Dr. Wilken, her family doctor. Dr. Wilken instructed her to stop working on January 8, 1990. Dr. Wilken noted Karen would probably not be able to do future work involving heavy lifting or frequent bending. Dr. Wilken set Karen's healing period from January 8, 1990, to December 13, 1990.

On January 15, 1990, Karen was offered light duty work with Clarke County at the same rate of pay, $5.25 per hour, she received as a home health aide. Karen, however, refused. She was subsequently terminated from Clarke County. Karen has not worked since her injury.

Karen has had a number of surgeries to correct a disc rupture and central canal stenosis. She also suffered an aggravation of a degenerative disc disease. Karen's doctors concluded her September 1989 injury resulted in an eleven percent functional impairment of the body as a whole.

Karen filed for workers' compensation benefits on May 7, 1990. The deputy industrial commissioner concluded Karen sustained a permanent partial disability of twenty-five percent, entitling her to 125 weeks of permanent partial disability benefits. The deputy commissioner also ruled Karen's

earnings from her work at Iowa Assembly and Murray Products must be excluded from the rate calculation. Her benefits were calculated based on her earnings from Clarke County, Dinham, and DHS. Karen was to receive $132.82 per week.

The industrial commissioner affirmed Karen's award of benefits and refused to apportion liability among Dinham and the DHS. The commission found that since neither the DHS nor Dinham were named in the lawsuit, there was no jurisdiction to determine their liability. On judicial review, the district court affirmed the agency decision declining to apportion liability and affirmed the industrial disability award. The district court reversed as to the applicable rate of compensation. The district court ruled Karen's earnings from Iowa Assembly and Murray Products must be included in her compensation rate. Clarke County and its insurance carrier appeal and Karen cross-appeals from the district court ruling.

Clarke County argues liability should be apportioned since Karen, while its employee at the time of her injury, was also an employee of Mrs. Dinham and the DHS. Clarke County also contends Karen's earnings at Iowa Assembly and Murray Products should not be counted when calculating her benefits. Clarke County lastly maintains Karen should not have been awarded an industrial disability since she is capable of doing light duty work at approximately the same pay.

On cross-appeal, Karen argues the district court erred in affirming the industrial commissioner's award of a twenty-five percent disability.

## I. APPORTIONMENT

■ Clarke County first claims Karen was a concurrent or dual employee at the time of her injury and liability should be apportioned among each employer. An employee may have more than one employer. *Caterpillar Tractor Co. v. Shook*, 313 N.W.2d 503, 506 (Iowa 1981). It has been recognized that compensation may be apportioned among employers when a worker is injured while performing a common duty for concurrent employers. 82 Am.Jur.2d *Workers' Compensation* § 230 (1992). Clarke County,

however, never sought to add Karen's other employers as parties to the action.

A home health care provider is defined by administrative rule as an independent contractor, and not an employee "of the State of Iowa, the Department of Human Services, any of its employees, or of its clients." Iowa Admin.Code R. 441.177(9)(1) (1988). Consequently, this rule would preclude Karen from maintaining an action for workers' compensation benefits against the department or Dinham. Similarly, it would restrict Clarke County from asserting apportionment claims against the department or Dinham.

■ Rules adopted by an administrative agency are given the force of law. *Torner v. State*, 399 N.W.2d 381, 385 (Iowa 1987). They are presumed valid and will be upheld as long as they are reasonable and consistent with legislative enactments. *Fernandez v. Iowa Dep't of Human Servs.*, 375 N.W.2d 701, 707 (Iowa 1985).

■ Clarke County never directly challenged the administrative rule by joining the department or Dinham as a party. Issues not properly raised at the trial level will not be considered on appeal. *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 187 (Iowa 1980). Instead, Clarke County argues the result is inequitable and asks us to apportion its liability. We disagree and decline.

■ Apportionment among non-parties is contrary to Iowa Code section 85.21, which permits apportionment only among "parties to a contested case." *See* Iowa Code § 85.-21(1) (1991). Moreover, apportionment among non-parties is incompatible with the overall scheme of the workers' compensation laws, which requires the industry to share the consequences of industrial accidents. *See Caterpillar Tractor*, 313 N.W.2d at 506. Clarke County simply wants its perceived unfairness visited upon Karen. We decline to do this.

## II. COMPENSATION RATE

■ Clarke County claims Karen's compensation rate may not include the additional earnings she received as an independent contractor. The industrial commissioner found

Karen was self-employed as an independent contractor for Iowa Assemblies and Murray Products at the time she was injured in her employment with Clarke County. The district court did not disturb this finding on review. Our review is to correct errors of law and we accept the findings of the industrial commissioner when supported by substantial evidence. *Gallardo v. Firestone Tire & Rubber Co.,* 482 N.W.2d 393, 395 (Iowa 1992).

Our review of the record supports the finding that Karen was an independent contractor with Iowa Assemblies and Murray Products. *See D & C. Express, Inc. v. Sperry,* 450 N.W.2d 842, 844 (Iowa 1990). Accordingly, we must determine whether the rate of compensation properly included earnings as an independent contractor. This presents a question of law, which we may consider with less deference to the decision of the commissioner than to finding of fact. *Id.*

The compensation to be received by an injured employee is based on "weekly earnings" at the time of injury. Iowa Code § 85.-36. To accommodate the various payment schemes and unique employment circumstances, a variety of methods are available to compute or determine an employee's weekly earnings. The method of computation in dispute in this case is found in Iowa Code section 85.36(10), and reads as follows:

> The basis of compensation shall be the weekly earnings of the injured employee at the time of the injury. Weekly earnings means gross salary, wages, or earnings of an employee to which such employee would have been entitled had the employee worked the customary hours for the full pay period in which the employee was injured, as regularly required by the employee's employer for the work or employment for which the employee was employed, computed or determined as follows and then rounded to the nearest dollar:
>
> \* \* \* \* \* \*
>
> 10. If an employee earns either no wages or less than the usual weekly earnings of the regular full time adult laborer in the line of industry in which the employee is

injured in that locality, the weekly earnings shall be one-fiftieth of the total earnings which the employee has earned from all employment during the twelve calendar months immediately preceding the injury.

Clarke County asserts Karen is not entitled to include her additional earnings as an independent contractor because an independent contractor is not an "employee" under the workers' compensation statute. *See* Iowa Code § 85.61(13). The district court found that Karen's status as an employee for Clarke County was controlling, and the particular method of compensation for a worker in Karen's circumstances allow "earnings from all employment" to be used. The court noted the statute did not specifically restrict the type of employment or exclude employment as an independent contractor.

We are required to resolve this issue by first looking to the language of the statute. Workers' compensation is statutory and must be construed according to its language. *Comingore v. Shenandoah Artificial Ice,* 208 Iowa 430, 437, 226 N.W. 124, 126 (Iowa 1929). The statute must not be artificially expanded by reading something into it that is not within the scope of the language used. *Downs v. A & H Constr. Ltd.,* 481 N.W.2d 520, 527 (Iowa 1992). The clear words and phrases found in the statute must be given their plain meaning. *Peterson v. Schwertley,* 460 N.W.2d 469, 471 (Iowa 1990). On the other hand, workers' compensation law exists to benefit workers and their dependents. *Caterpillar Tractor,* 313 N.W.2d at 506. Consequently, when the statute is unclear and ambiguous, it must be interpreted liberally in furtherance of its humanitarian objective. *Id.*

Our review of the statute reveals that the definition of "weekly earnings" under Iowa Code section 85.36 is clearly limited to an employer-employee situation. The term is specifically defined as the gross earnings "of an employee" which he or she would have received had the employee worked the usual hours for the full pay period "as regularly required by the employee's employer." Iowa Code § 85.36. The phrase "employee's employer" rejects the notion that weekly

earnings as an independent contractor are included. Self-employed workers are not employees of themselves and cannot be both employers and employees. *See Metzgar v. General Refractories,* 118 Pa.Cmwlth. 355, 545 A.2d 442, 444 (1988).

The terms "gross earnings" and "pay period" are also statutorily defined by reference to an employer. Furthermore, the term "employee" is defined by statute by referring to employment for an employer, and specifically excludes an independent contractor. *See* Iowa Code § 85.61. The statutory definition of "weekly earnings" does not embrace earnings as an independent contractor.

∎ Once a statute has defined a term, that term must be given consistent meaning absent contrary legislative intent. *See Kehde v. Iowa Dep't of Job Serv.,* 318 N.W.2d 202, 205 (Iowa 1982). The statutory compensation scheme under section 85.36 is based on "weekly earnings" and the special methods of computation which follow the statutory definition merely relate back to this definition. They do not change or enlarge the definition of "weekly earnings." Thus, it would be inconsistent to construe the phrase "from all employment" found in Iowa Code section 85.-36(10) to include earnings as an independent contractor when the predicate language of the statute has previously defined "weekly earnings" in terms of earnings from an employer. Moreover, Iowa Code section 85.-36(10) is specifically limited to "weekly earnings," and the phrase "from all employment" is tied directly to "weekly earnings." There is no indication from the language of the statute that the legislature intended to include wages as an independent contractor when determining "weekly earnings."

∎ We recognize the inclusion of noncovered concurrent employment in computing the level of compensation to be paid to an injured worker would be compatible with the general purposes of the workers' compensation law. The basic goal is to accurately estimate a claimant's earning capacity and provide a level of compensation which bears a proper relationship to the earning capacity. Arthur Larson, *Workmen's Compensation Law* § 60.32 (1993); *see also First Virginia Banks, Inc. v. McNeil,* 8 Va.App. 342, 381

S.E.2d 357 (1989); *Produce v. Industrial Comm'n of Utah,* 657 P.2d 1354 (Utah 1983); *Holloway v. T.A. Mebane, Inc.,* 111 N.C.App. 194, 431 S.E.2d 882 (1993). Statutory compensation generally seeks to replace what an injured employee would have been earning but for the injury. If a disability suffered in the course of covered employment also results in lost wages from other concurrent work, the loss felt by the injured employee includes wages from all sources of employment, whether covered or noncovered. *See Snyder Oil Co. v. Embree,* 839 P.2d 494, 497 (Colo.App.1992); *see also* Larson at § 60.-31(c) (competing equities between employee and employer should be resolved in favor of the employee).

Notwithstanding, we must not legislate in our resolution of this issue. To the contrary, we must search for legislative intent as expressed by what our legislature has said, not by what it should or might have said, or what other jurisdictions have said. *See State v. Vietor,* 208 N.W.2d 894, 898 (Iowa 1973). The language of our statute requires us to exclude earnings as an independent contractor.

∎ We also recognize our decision to exclude earnings as an independent contractor from weekly earnings is consistent with the decision of the commissioner in this case, who relied on a prior administrative decision which declined to include earnings from self-employment under Iowa Code section 85.-36(10). The accepted principle of giving weight to administrative interpretations of relevant statutes is particularly germane when the interpretation is long standing. *Welp v. Iowa Dep't of Revenue,* 333 N.W.2d 481, 483 (Iowa 1983). Our conclusion also comports with the recognized view that "employment" for the purposes of our compensation law refers only to an arrangement between an employer and employee. *Rouse v. State,* 369 N.W.2d 811, 814 (Iowa 1985). Furthermore, courts from other jurisdictions have refused to include earnings as an independent contractor in computing compensation. *See Deichler v. Workers' Compensation Appeal Bd.,* 143 Pa.Cmwlth. 189, 598 A.2d 1030 (1991); *Randell Inc. v. Chism,* 404

So.2d 175 (Fla.App.1981); *Wheeler v. Industrial Comm'n*, 22 Ariz.App. 488, 528 P.2d 874 (1974).

### III. INDUSTRIAL DISABILITY

 Clarke County claims the trial court erred in awarding Karen a twenty-five percent industrial disability. It asks that the award be reduced. Karen, on her cross-appeal, claims she is totally disabled and believes the applicable factors were not properly considered in making the award. She asks the issue of industrial disability be remanded for reconsideration.

 Industrial disability means reduced earning capacity. *Guyton v. Irving Jensen Co.*, 373 N.W.2d 101, 103 (Iowa 1985). Many factors are considered in gauging industrial disability, including the worker's bodily impairment, age, intelligence, education, qualifications, experience, and the effect of the injury on the worker's ability to obtain suitable work. *Id.* When these factors preclude a worker from obtaining regular work to earn a living, a worker with only a partial functional disability has a total industrial disability. *Id.*

 The findings of the industrial commissioner will be upheld unless a contrary result is required as a matter of law. *Wetzel v. Wilson*, 276 N.W.2d 410, 412 (Iowa 1979). The question is not whether the evidence might support a different finding, but whether it supports the finding made. *Ward v. Iowa Dep't of Transp.*, 304 N.W.2d 236, 237–38 (Iowa 1981).

 The industrial commissioner has a duty to examine all the testimony bearing on the relative factors in determining the degree of industrial disability and to determine the credibility of such testimony. *Klein v. Furnas Elec. Co.*, 384 N.W.2d 370, 374 (Iowa 1986). Reasons must be given to reject material evidence. *McSpadden*, 288 N.W.2d at 186.

Karen argues the commissioner improperly rejected the testimony of her vocational expert. We disagree. The commissioner simply limited the weight of the testimony due to limited contact Karen had with the witness. This was within the role of the commissioner as the finder of fact.

Karen also argues the commissioner failed to consider whether other suitable employment was realistically available to her. *See Guyton*, 373 N.W.2d at 103–104. The review of the evidence and the findings of the commissioner do not support the claim. Karen's own expert identified five areas of employment she could pursue, and the commissioner properly applied the relevant factors to assess her ability to compete for the employment. The difficulty was that Karen had made no effort to become re-employed following her healing period.

We find the industrial disability rating is supported by substantial evidence.

In conclusion, we reverse the district court in part and affirm in part. We affirm the decision of the industrial commissioner. The case is remanded to the industrial commissioner to establish Karen's weekly earnings consistent with this decision. Costs are divided equally between the parties.

**AFFIRMED IN PART AND REVERSED IN PART.**