**IN THE COURT OF APPEALS OF IOWA**

No. 23-0402
Filed May 8, 2024

**EMERSON DENNIS SAUL,**
    Plaintiff-Appellant,

**vs.**

**SEABOARD TRIUMPH FOODS, L.L.C.,**
    Defendant-Appellee.
_____

    Appeal from the Iowa District Court for Woodbury County, Roger L. Sailer,

Judge.

    A plaintiff appeals from the district court's grant of summary judgment

dismissing his negligence claim. **REVERSED AND REMANDED.**

    Christopher P. Welsh of Welsh & Welsh, PC, LLO, Omaha, Nebraska, for

appellant.

    Sarah K. Kleber and Jeff W. Wright of Heidman Law Firm, P.L.L.C., Sioux

City, for appellee.

    Heard by Bower, C.J., and Badding and Langholz, JJ.

**LANGHOLZ, Judge.**

As a part of the "grand bargain" underlying Iowa's workers' compensation system, in exchange for the simplified process of receiving compensation for their workplace injuries, injured workers give up the right to sue their employers over those injuries. *Loew v. Menard, Inc.*, 2 N.W.3d 880, 883 (Iowa 2024); *see also* Iowa Code § 85.20(1) (2020). But when workers employed by a temporary staffing agency are injured at their assigned worksite, the question arises whether the company they are assigned to work for—the staffing agency's customer—is also their employer. Our supreme court has held that this is a fact question—resolved case-by-case, based on whether the worker and the customer "entered into a contract of hire, express or implied." *Parson v. Procter & Gamble Mfg. Co.*, 514 N.W.2d 891, 893 (Iowa 1994). And when no express contract exists between the two, both the worker and the customer must have intended to establish an employment relationship to find an implied contract. *See id.* at 894–95.

Here, the customer—Seaboard Triumph Foods, L.L.C.—presented strong evidence supporting its motion for summary judgment from which a factfinder could conclude that it was a second employer of the injured worker—Emerson Saul. But we cannot say as a matter of law that this is the only reasonable conclusion a factfinder could reach from the evidence. For starters, Seaboard Triumph's human resources manager testified that Saul was *not* Seaboard Triumph's employee. And some provisions in the contract between Seaboard Triumph and the staffing agency could support an inference that Seaboard Triumph did not intend to establish an employment relationship. The district court thus erred in granting summary judgment. We reverse and remand for further proceedings.

I.

In 2017, Seaboard Triumph opened a new pork processing plant in Sioux City, Iowa. To meet its labor needs as it ramped up and tried to increase its own workforce, it contracted with a temporary staffing agency to recruit and provide temporary employees at the plant.

*The Staffing Contract.*  Under Seaboard Triumph's contract with the staffing agency, the agency agreed "to provide temporary employees (each a [staffing agency] Employee[]) to" Seaboard Triumph.  Indeed, the contract repeatedly refers to a temporary employee as the staffing agency's employee throughout the contract.  And unless the temporary employee has worked at least 600 hours in a year, the contract requires Seaboard Triumph "to pay a referral fee" of up to "20% of the first year wages of any [staffing agency] Employee who is hired directly or indirectly (e.g., directed to sign on through another staffing agency) by [Seaboard Triumph] within twelve (12) months after said [staffing agency] Employee's last day of work for [Seaboard Triumph] through [the staffing agency]."

The staffing agency handles weekly payroll and tax withholding; covers mandatory insurance; and agrees to "maintain, and keep in force and effect during the term of this Agreement and to the full extent required by law, workers' compensation insurance and unemployment insurance."  Temporary employees are paid time-and-a-half overtime and "[i]f [Seaboard Triumph] employees are paid double time to work holidays, etc. [staffing agency] employees will be paid double time also."  But according to deposition testimony of Seaboard Triumph's human resources manager, a temporary employee does not receive the same benefits of employment as a directly hired employee because, "He was not our employee."

The staffing contract itself does not include any provision expressly stating that temporary employees are Seaboard Triumph employees or disclaiming that employment relationship. But Seaboard Triumph agreed, in a section titled "Loss and Damages While Working for Client," that "the [staffing agency] Employees are under [Seaboard Triumph's] supervision while they are placed with [Seaboard Triumph]." Seaboard Triumph would further "be responsible for any and all loss, damage or injury caused by a [staffing agency] Employee, directly or indirectly, while the [staffing agency] Employee is under the supervision of" Seaboard Triumph. Seaboard Triumph also agreed to comply with various requirements about the work environment, safety practices, and recording the temporary employee's hours worked.

"Upon approval and employment offer, [the staffing agency] will E-verify all workers, conduct drug screens and background checks for all workers hired through [the staffing agency] for Seaboard Triumph." Other than this implicit recognition of some "approval and employment offer" process, the contract does not expressly address Seaboard Triumph's rights to accept and terminate the temporary workers. But its vice president of human resources swore in an affidavit that Seaboard Triumph "was able to select referrals from [the staffing agency] as needed and was not obligated to accept any person referred for work as a temporary employee by" the staffing agency. Likewise, she said that Seaboard Triumph "could discipline temporary employees and end their engagement at will without [the staffing agency's] input, permission or approval."

*Saul's Hiring.* In spring 2019, Saul approached the staffing agency about a job. He spent a day watching safety videos at the staffing agency. And the staffing

agency assigned him a job at Seaboard Triumph, telling him that he should show up at the plant the following Monday for a week of orientation—the same orientation required of any Seaboard Triumph employee. The staffing agency did not have employees at the plant to supervise the temporary employees. Rather, Saul was supervised by Seaboard Triumph employees while working at the plant.

Except for different pay and benefits being provided by the staffing agency, Saul was essentially treated the same as any other full-time employee at the plant. He followed the same work rules, policies, and procedures that applied to other employees. He was issued the same smocks, hard hats, and other personal protective equipment that all employees used. He had the same identification card and access to the same parking lots, locker rooms, break areas, health facilities, and laundry facilities as other employees. He worked the same sorts of shifts and was integrated fully into the production line with all other employees. And Saul even joined the same union and got the same union card as other employees.

*The Injury.* A few months later—in July 2019—Saul's ankle was injured while working at Seaboard Triumph. A Seaboard Triumph employee operating a forklift ran into a pallet, causing Saul's ankle to be slammed between two pallets. Saul filed a workers' compensation claim against the staffing agency and the agency's workers' compensation insurer. And those parties eventually reached a compromise settlement on the claim, paying Saul $75,000 in return for his release of all claims related to the injury—"under Iowa Workers' Compensation law or otherwise"—against the staffing agency and its insurer.

*This Proceeding.* About a year after the injury, Saul also sued Seaboard Triumph. He claimed that Seaboard Triumph was liable for its forklift driver

negligently causing Saul's injury under a theory of respondeat superior. And he claimed that Seaboard Triumph was liable for its own conduct negligently hiring, retaining, and training the forklift driver.

Two years later—after the parties had engaged in written discovery and depositions—Seaboard Triumph moved for summary judgment. It argued that Saul's suit was barred by Iowa Code section 85.20 because Saul was Seaboard Triumph's employee at the time of his workplace injury.

Saul resisted, arguing that "[w]hile the facts in the present case are for the most part undisputed, the inferences that can be drawn from those facts are not," and so a material fact dispute existed about whether the parties intended to enter an employment relationship. He highlighted the staffing contract's provisions calling the temporary employees the staffing agency's employees. And he pointed to the testimony of Seaboard Triumph's human resources manager that Saul "was not our employee."

The district court agreed with Seaboard Triumph. The court reasoned that "under the facts in the record, particularly when those facts are considered in light of judicial precedent upholding summary judgment on lesser facts, that only one inference can reasonably be drawn, which is that Seaboard and Saul intended to enter into an employment contract." The court explained that the staffing contract provisions merely supported a finding that Saul was an employee of the staffing agency—not that he was not also an employee of Seaboard Triumph. And it found the human resource manager's testimony that Saul "was not our employee" immaterial because it was her "subjective opinion on the matter, based upon

criteria known only to her and made in response to specific questions on narrow topics." The court thus granted summary judgment and dismissed Saul's case.

Saul unsuccessfully moved for reconsideration. And he now appeals.

## II.

An employee's "rights and remedies" under Iowa's workers' compensation laws "shall be the exclusive and only rights and remedies of the employee . . . at common law or otherwise, on account of [a recoverable] injury . . . [a]gainst the employee's employer." Iowa Code § 85.20. The statute does not meaningfully elaborate on the definition of employer.[1] But it defines "'worker' or 'employee'" to generally "mean[] a person who has entered into the employment of, or works under contract of service, express or implied, . . . for an employer." *Id.* § 85.61(12). Neither an independent contractor nor an employee of the independent contractor is an employee of the independent contractor's client. *See id.* § 85.61(12)(c)(2); *Farris v. Gen. Growth Dev. Corp.*, 354 N.W.2d 251, 255 (Iowa Ct. App. 1984). Still, "an employee may have more than one employer" for workers' compensation purposes. *Caterpillar Tractor Co. v. Shook*, 313 N.W.2d 503, 506 (Iowa 1981).

In *Parson v. Procter & Gamble Manufacturing Co.*, our supreme court interpreted these statutes in the context of a lawsuit by an employee of a staffing agency against the agency's customer. *See Parson*, 514 N.W.2d at 892–93. The court explained that the "threshold determination in deciding whether a worker falls into the workers' compensation scheme is whether the worker entered into a contract of hire, express or implied." *Id.* at 893. When, as "in many cases," no

---

[1] As relevant here, it merely states that "'[e]mployer' includes and applies to . . . [a] person, firm, association, or corporation." Iowa Code § 85.61(3).

express contract exists between the temporary employee and the staffing agency's customer, an implied contract may be found only if both the temporary employee and the customer intended to enter into an employment relationship. *Id.* at 894. "[T]he presumption is that the [staffing agency] continues as the sole employer." *Id.* And so the court has suggested that we should be "vigilant in insisting upon a showing of a deliberate and informed consent by the employee before employment relation will be held a bar to common-law suit." *Id.* (cleaned up).

The court also recognized that it has used a multi-factor test as "an aid to the analysis" of the employment relationship. *Id.* at 895; *see also Henderson v. Jennie Edmundson Hosp.*, 178 N.W.2d 429, 431 (Iowa 1970) (setting out five "named elements" as "(1) the right of selection, or to employ at will (2) responsibility for the payment of wages by the employer (3) the right to discharge or terminate the relationship (4) the right to control the work, and (5) is the party sought to be held as the employer the responsible authority in charge of the work or for whose benefit the work is performed," and "the overriding element of the intention of the parties as to the relationship they are creating"). But the court held that the test is "unnecessary" because it is "of secondary consideration to the contract requirement," which resolved the appeal before it. *Parson*, 514 N.W.2d at 895.

Of special significance here, the supreme court also held that the ultimate "question of whether a contract of hire exists is ordinarily one of fact." *Id.* at 893. This is "particularly" so when "the terms of the contract are unclear" and must be inferred "from what [the parties] did and said." *Id.* at 894 (cleaned up). And thus, summary judgment dismissing a workplace injury suit because it is against a worker's employer is appropriate only if the evidence submitted in support or

resistance of the motion shows that "there was no genuine issue of material fact as to the existence of an employment relationship between" the plaintiff and the defendant. *Id.* at 893; *see also* Iowa R. Civ. P. 1.981(3). The record "must be viewed in the light most favorable to the resisting party." *Parson*, 514 N.W.2d at 893. That means we give the resisting party "every legitimate inference that can be reasonably deduced from the evidence, and if reasonable minds can differ on how the issue should be resolved, a fact question is generated." *Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 501 (Iowa 2013) (cleaned up); *see also Goodpaster v. Schwan's Home Serv., Inc.*, 849 N.W.2d 1, 6 (Iowa 2014) (explaining this is so even if the underlying facts are undisputed). We review the court's decision "to grant summary judgment for correction of errors at law." *Goodpaster*, 849 N.W.2d at 6.

Saul argues that the district court erred in granting summary judgment because even though "the facts are largely undisputed," "the inferences that can be drawn from the facts are not," and "reasonable minds could have inferred there was not intent to enter into an employment relationship." He contends that the court failed to properly follow *Parson* and its holding that the ultimate employment relationship is a fact question to be decided based on the parties' intent and instead relied too heavily on an earlier published decision of our court—*Jones v. Sheller-Globe Corporation*, 487 N.W.2d 88 (Iowa Ct. App. 1992). We agree.

Saul and Seaboard Triumph did not have an express contract. So this suit is barred by section 85.20 only if an implied contract existed based on both Saul's and Seaboard Triumph's intent to form an employment relationship. *See Parson*, 514 N.W.2d at 894. And at this summary-judgment stage, we must ask whether

reasonable minds could differ about the parties' intent based on the evidence presented to the district court. *See Boelman*, 826 N.W.2d at 501. If they could, then summary judgment should not have been granted. *See id.*

Seaboard Triumph presented much evidence from which a jury could conclude that both parties intended to establish an implied contract of hire. For the three months before his injury, Saul worked at the Seaboard Triumph plant, under the supervision of Seaboard Triumph employees, and—aside from pay and benefits—was mainly treated the same as Seaboard Triumph's employees. From work rules to work shifts, locker rooms to hard hats, Seaboard Triumph did not distinguish between temporary employees from the staffing agency and their own. The staffing agency had no presence at the Seaboard Triumph plant. No provision of the staffing contract expressly said that the temporary employees were *not* employees of Seaboard Triumph or that they or the staffing agency were independent contractors. And Saul not only agreed to the job assignment and continued at it for three months—he joined the union for the plant too.

So if the supreme court in *Parson* had held that the existence of an employment relationship is a legal question—properly decided by the court based on largely undisputed facts—we might conclude that it is established here. But *Parson* came out the other way, holding that it is a fact question—only for us to decide as a matter of law if no reasonable mind could reach the contrary conclusion from the facts. *See Parson*, 514 N.W.2d at 893–94. This is a heavy lift for either party at summary judgment—but particularly for a claimed employer like Seaboard Triumph since we must presume that the staffing agency is "the sole employer."

*Id.* at 894.  And Saul correctly points to evidence from which a reasonable mind could find the required intent lacking.

"No.  He was not our employee."  That is how Seaboard Triumph's human resources manager answered a question in her deposition about whether Saul received any of the same benefits of employment as Seaboard Triumph's directly hired employees.  The unprompted admission came after a series of questions about the benefits Seaboard Triumph provides its employees, including—according to the human resources manager—health insurance, workers' compensation insurance, short-term disability, dental, vision, vacation, floating holidays, and earned time off.  She was then asked, "In fact, when Mr. Saul was employed by [the staffing agency] and working at Seaboard, none of those benefits were provided to him?"  And she responded, "No.  He was not our employee."

Seaboard Triumph has not pointed to any other testimony in which its human resources manager walked back or clarified that statement.  Indeed, Seaboard Triumph does not really address the statement at all.  Instead, it focuses on other arguably unfavorable parts of her testimony, where she agreed that Saul was an employee of the staffing agency.  And it points out that those statements responded to leading questions and that Saul's employment by the staffing agency does not preclude his employment by Seaboard Triumph too.  True enough.  But neither point holds true for the manager's unprompted explanation that Saul "was not our employee."

Nor can we say, as the district court did, that the statement is immaterial to whether Saul was Seaboard Triumph's employee.  To be sure, Seaboard Triumph can argue to the factfinder that its human resources manager was mistaken or

merely sharing her opinion or using the term "employee" in a different way than the workers' compensation laws. But this was not a stray statement made by just any employee—it was made by Seaboard Triumph's human resources manager, under oath, in a deposition for this proceeding. And so her testimony that Saul was not Seaboard Triumph's employee could lead a factfinder to decide it is less likely that Seaboard Triumph intended for Saul to be its employee. *See* Iowa R. Evid. 5.401 (defining "relevant evidence" as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" when the fact is of legal consequence).

Of course, this does not turn the testimony into a "'gotcha' admission" that "stops further inquiry" on the question of employment status as Seaboard Triumph contends Saul is trying to do. And Seaboard Triumph is correct that all "the facts are what drive employment status," rather than a single piece of evidence. But we do not resolve this factual dispute at the summary-judgment stage. It is enough for now that a reasonable factfinder *could* infer from the testimony that Seaboard Triumph lacked the required intent to form an employment relationship.

Beyond the testimony, Saul also looks to Seaboard Triumph's contract with the staffing agency as another basis from which one could reasonably infer a lack of intent. The contract repeatedly describes temporary employees as the staffing agency's employees and never describes them as Seaboard Triumph's employees or joint employees. And under the contract, Seaboard Triumph could have to pay a referral fee for "any [staffing agency] Employee who is hired directly or indirectly (e.g., directed to sign on through another staffing agency) by [Seaboard Triumph] within twelve (12) months after said [staffing agency] Employee's last day of work

for [Seaboard Triumph] through [the staffing agency]." Again, a reasonable factfinder could infer from these contract provisions that Seaboard Triumph did not intend to form its own employment relationship with the staffing agency's temporary employees.

We recognize that reasonable minds could draw contrary inferences from the evidence too. But we are here on Seaboard Triumph's summary judgment motion—not Saul's. And so, because "reasonable minds can differ," summary judgment is improper. *Boelman*, 826 N.W.2d at 501.

In urging instead that summary judgment is proper, Seaboard Triumph relies heavily—as did the district court—on our decision in *Jones*, 487 N.W.2d 88. Indeed, the facts in *Jones* are similar to those here. *See id.* at 90–91. And there, we did affirm a grant of summary judgment dismissing a suit by a temporary employee against his staffing agency's customer because it was also his employer. *Id.* at 92. So it is understandable that the district court reasoned that if summary judgment was proper there, it must be here too.

But we decided *Jones* two years before the supreme court decided *Parson.* In fact, the district court decision under review in *Parson* had relied largely on *Jones* to grant summary judgment for the staffing agency's customer. *See Parson*, 514 N.W.2d at 893. But the supreme court rejected *Jones*, explaining that "*Jones* failed to recognize that the employment issue is a question of fact." *Id.* at 897 n.4. And in holding instead that the existence of the required employment relationship is a fact question, the supreme court abrogated *Jones*. It can no longer provide support that summary judgment is appropriate here.

It matters not that the facts of *Parson* are distinguishable from—and much less favorable for the claimed employer—than the facts here or in *Jones. Compare Parson*, 514 N.W.2d at 894–96, *with Jones*, 487 N.W.2d at 90–91. In *Parson*, the supreme court did not distinguish *Jones* because the facts in *Jones* supported a finding of an employment relationship—it said *Jones* used the wrong legal standard by treating the issue as one of law instead of "a question of fact." *Parson*, 514 N.W.2d at 897 n.4. And as a question of fact, our job is not to try to answer it—by matching these facts with the most similar ones from prior cases or otherwise. We must only decide whether Seaboard Triumph has shown that there is no genuine dispute on the question—that no reasonable mind could reach any conclusion from the facts except that Seaboard Triumph and Saul intended to establish an employment relationship. *See id.* at 893–94.

Applying that proper standard, there will be a wide swath of fact patterns where reasonable minds could differ about the conclusion and summary judgment is thus improper. So some prior cases denying summary judgment will have facts more favorable for the temporary employee.[2] Others will have facts more favorable

---

[2] *See Parson*, 514 N.W.2d at 894–96; *Thompson v. ATI Prods., Inc.*, No. 14-1765, 2015 WL 4935967, at *2–4 (Iowa Ct. App. Aug. 19, 2015) (reversing grant of summary judgment where provisions in staffing contract, other employment documents, and temporary employee's testimony supported inferences that he was only an employee of the staffing agency); *Velazquez v. Hydro Conduit Corp.*, No. 05-0603, 2006 WL 469351, at *2 (Iowa Ct. App. Mar. 1, 2006) (reversing grant of summary judgment where staffing agreement expressly stated temporary employees "shall not be considered as" employees of the claimed employer and temporary employee submitted affidavit that he "never had a deliberate and informed consent to be an employee" of that company).

to the claimed employer.[3]  But as shown by the only published decision applying *Parson* in this same context, summary judgment is proper only when there is no evidence—no testimony suggesting a contrary intent by either party, no contract language, nothing—from which a factfinder could conclude that no employment relationship was established.  *See Fletcher v. Apache Hose & Belting Co.*, 519 N.W.2d 839, 840–41 (Iowa Ct. App. 1994) (affirming summary judgment where temporary worker agreed he had job lined up before seeking assignment from staffing agency, admitted that the agency's customer was decisionmaker on hiring and could fire him, and was treated the same as other employees and even offered permanent employment after the injury).[4]  While the facts here are admittedly strong for Seaboard Triumph, for the reasons discussed above, they are not so one-sided that summary judgment is proper under *Parson*.

Finally, Seaboard Triumph contends that allowing this suit would "controvert the goals of the workers' compensation system to avoid significant delay and expense" and "have a chilling effect on the use of staffing agencies and contracted labor services."  But denying summary judgment does not mean that Saul will

---

[3] *See Sager v. Innovative Lighting, L.L.C.*, No. 15-0783, 2016 WL 3002899, at *5–6 (Iowa Ct. App. May 25, 2016) (reversing grant of summary judgment—despite largely undisputed facts—based on differing inferences that could be drawn from evidence, including a letter from the claimed employer's human resources director saying that the temporary employee "was not employed" by the company at the time of the injury).

[4] We recognize that we also once affirmed a grant of summary judgment to a claimed employer of a temporary employee over a dissent that would have held a fact dispute remained about the parties' intent based on evidence that included the staffing contract and the temporary employee's testimony.  *See Willms v. Associated Materials Inc.*, No. 03-1327, 2004 WL 2578969, at *3 (Iowa Ct. App. Nov. 15, 2004); *see also id.* at *4 (Hecht, J., dissenting).  But this unpublished case—unlike *Parson*—is not binding on us.  *See In re S.O.*, 967 N.W.2d 198, 206 (Iowa Ct. App. 2021); *see also* Iowa R. App. P. 6.904(2)(a)(2)*.*

ultimately succeed in his claim—if a factfinder decides Seaboard Triumph was also his employer, Seaboard Triumph will be immune under Iowa Code section 85.20. And any policy concerns about the suit continuing on to trial do not give us leave to ignore binding supreme court precedent that the employer status of staffing-agency customers is a fact question. *See Parson*, 514 N.W.2d at 893–94. Those concerns are thus better addressed to the supreme court or the legislature.

Because reasonable minds could differ about whether Saul and Seaboard Triumph entered an employment relationship during his temporary assignment to the Seaboard Triumph plant, the district court erred in granting Seaboard Triumph summary judgment based on Iowa Code section 85.20.

**REVERSED AND REMANDED.**